# ILLINOIS OFFICIAL REPORTS

---

### *In re Raheem M.*, 2013 IL App (4th) 130585

---

| | |
|---|---|
| Appellate Court Caption | In re: RAHEEM M., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. RAHEEM M., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0585 |
| Filed | December 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The adjudication of delinquency entered against respondent based on findings that he was guilty of aggravated battery of a teacher and disorderly conduct was affirmed by the appellate court, but his sentence to the Department of Juvenile Justice and the fines imposed were vacated and the cause was remanded for a new sentencing hearing, since the evidence was sufficient to establish beyond a reasonable doubt that the teacher involved in a disturbance in the school cafeteria suffered bodily harm as a result of respondent's battery, but the trial court failed to comply with the statutory requirement that alternatives to confinement be considered before sentencing respondent to the DOJJ. |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 12-JD-185; the Hon. Claudia S. Anderson, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Arden J. Lang (argued), all of State Appellate Defender's Office, of Springfield, for appellant.

Randall Brinegar, State's Attorney, of Danville (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.
Justice Holder White concurred in the judgment and opinion.
Justice Steigmann dissented, with opinion.

## OPINION

¶ 1    In April 2013, the trial court found respondent, Raheem M. (born October 19, 1995), guilty of aggravated battery of a teacher (720 ILCS 5/12-3.05(d)(3) (West 2012)) and disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2012)). In May 2013, the court sentenced respondent to an indeterminate term in the Department of Juvenile Justice (DOJJ). Respondent appeals, arguing the following: (1) the State's charge of aggravated battery of a teacher was fatally defective because it failed to specify the manner of battery upon which it was predicated, thereby failing to apprise respondent of the precise offense charged with enough specificity to prepare his defense and, if convicted, avoid a future prosecution for the same conduct; (2) the State failed to prove respondent guilty of aggravated battery of a teacher beyond a reasonable doubt; (3) respondent's sentence to the DOJJ must be vacated because of several sentencing errors; and (4) the fines assessed against respondent must be vacated because neither the circuit clerk nor the trial court was authorized to assess fines against respondent in this juvenile proceeding. We affirm respondent's adjudication of delinquency, vacate his sentence and the fines imposed, and remand for a new sentencing hearing.

¶ 2                          I. BACKGROUND

¶ 3    On October 18, 2012, the State filed a petition for adjudication of delinquency against respondent. The fact sheet attached to the petition included two counts. Count I charged respondent with aggravated battery of a teacher in violation of section 12-3.05(d)(3) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.05(d)(3) (West 2012)). Count II charged respondent with disorderly conduct in violation of section 26-1(a)(1) of the Criminal Code (720 ILCS 5/26-1(a)(1) (West 2012)).

¶ 4    The trial court held a hearing on the petition in April 2013. Robert McGuire testified he worked as a hall monitor at Danville High School. A fight occurred in the school cafeteria

on September 10, 2012, at approximately 11:20 a.m. McGuire was stationed in the middle of the cafeteria. The fight started when two male students had a verbal altercation. Less than a minute after the two students were separated, seven to nine young men went to the other side of the cafeteria and a brawl began. McGuire grabbed one of those students and shielded him from chairs being thrown at the young man. The chairs were thrown about 20 to 30 feet. It took approximately 12 minutes to get everyone under control and the cafeteria back to normal. The actual fight did not last that long.

¶ 5    McGuire testified he was struck two to four times by the chairs on his midsection and lower body. He saw respondent, whom he identified in court, throw at least one of the chairs that struck him. When asked whether he suffered any injuries, McGuire stated he was not cut and probably had minor bruises. He knew respondent from seeing him around the school, but he had never had any type of problem with him before.

¶ 6    Larry Withers testified he also works as a hall monitor at Danville High School. During the lunch period, Withers told Officer Weaver they probably were going to have some problems in the cafeteria because the students were hollering at each other across the lunchroom. When he reentered the student cafeteria, the fight broke out. There were about six or seven students involved. Two students were punching each other, and Withers grabbed one of them and put him against the wall. He did not see who threw the chairs at McGuire. According to Withers, respondent was in the middle of the brawl.

¶ 7    Thomas Lane testified he is a hall monitor at Danville High School. He entered the student cafeteria in time to see respondent throwing a chair. Lane was about 30 feet away from respondent when he saw respondent throw the chair. Respondent threw one of several chairs that were thrown.

¶ 8    Officer Doug Weaver, a Danville police officer assigned to the high school, testified he entered the student cafeteria after he became aware of the fight and only saw another student, Maurice H., throw a chair. Respondent was with Maurice H. when they started running toward the opposite end of the cafeteria. Weaver was able to catch up with respondent and Maurice H. He took respondent and Maurice H. to the public safety building.

¶ 9    Respondent testified on his own behalf. According to respondent, on the day of the incident, one of the other students in the brawl had an altercation with one of respondent's friends in the hallway. As to what happened in the cafeteria, respondent testified:

"I was in the lunch line, and I noticed that one of the persons that was in the incident had struck my friend with a chair. Then I ran over there; and as I ran, one of them threw a chair at me. Then I threw one back, and I guess it hit whoever his name is."

¶ 10    The trial court found respondent guilty on both counts. The court stated:

"Now, the problem that I have at this point is that I have a Class 3 felony and, of course, a Class A misdemeanor. But naturally I'm concerned about the Class 3 felony; and I'm interested in some things that I might be able to get ahead of sentencing which would, to a large degree, include [a] record of incidents that had occurred at Danville High School ***."

The court, *sua sponte*, ordered respondent detained, finding his detention a matter of immediate and urgent necessity and in the best interest of the public and the minor, despite

no request by the State to do so and despite the fact respondent had been free since the incident occurred seven months earlier. Further, respondent was scheduled to take his general equivalency degree (GED) exam May 14 and 15, but as a result of his detention he was unable to do so.

¶ 11    On May 28, 2013, the trial court held a sentencing hearing. The court noted it had reviewed a social history report in the case dated May 22, 2013. Respondent told the court, "I would like to say I'm sorry for the incident that was caused in September, and if I was to be released, that I would get right, start working towards my GED that I got scheduled in June."

¶ 12    The State recommended respondent be sentenced to an indeterminate term in the DOJJ, noting the case involved a battery to a teacher, a Class 3 felony, and this was not his first incident at school. Defense counsel noted while respondent had a number of police contacts, he had never been charged with a criminal offense. He had no prior time in the DOJJ and had done rather well with school at the juvenile detention facility. Counsel noted of the codefendants: one received probation, one received supervision, and three had their cases dismissed. Defense counsel also noted respondent did not have a perfect report at juvenile detention. In addition, defense counsel stated:

"Clearly, this young man has the potential to do well. He has some high risk factors. I think that his biological father would demonstrate that. [The biological father's] got a lengthy criminal history, and I think there is some significant danger for this young man to follow in his father's footsteps. If you send him to the Department of Corrections, I think you'll almost seal the deal that he's going to follow his father's example rather than his stepfather's example, and I think that would be a tragedy. If, on the other hand, you place him in a community based sentence, and order that he [get] his GED, order that he maybe get into some counseling to deal with some of the issues that, you know, clearly he has as reflected, I think in particular in his detention report, he could probably stand to have some counseling to deal with maybe some issues that he has with adults so that he can learn to react more positively, and I think he is balanced on a cliff right now, and he can either go over that cliff and have a life where he's locked up the majority of his adult life, or he can find a new path here. And at 17, he's at a very vulnerable age. I would strongly suggest that the solution for him, the only chance he has of turning his life around really at this point is a chance at probation."

¶ 13    The trial court said it had reviewed respondent's student discipline report covering incidents between September 7, 2010, and September 10, 2012, which was attached to his presentence report. The court noted "the incidents and the events that occur[red] illustrate *** quite poetically the state of the minor, which is an attitude of aggression, an attitude of refusal to show respect to the people who are in authority over him, and not only that, but refusal to show respect to his fellow students." The court found it somewhat astonishing it appeared respondent was capable of earning A's and B's in school. However, the court noted respondent's behavior had interrupted his ability to maintain an acceptable grade point average and to get an education.

¶ 14    The trial court stated respondent's mother had a clean record and appeared to be making

the best effort she could with respect to respondent. However, respondent's biological father had two pages of criminal convictions, including aggravated assaults, aggravated batteries, and an aggravated battery to a police officer. (The biological father's entire criminal history was set forth in the social history report.) The court told respondent, "So, maybe some modification of your mind-set needs to take place, because you think that's okay, and it's not. It's not okay." The court also noted respondent had various contacts and issues with local police. However, the court acknowledged none of those contacts were convictions and stated it was not placing much weight on those contacts. However, based on those contacts and the information from Danville High School, the court stated it did not have much hope a community-based sentence would be appropriate. The court went on:

"I agree the Court is to try to look at some alternative that would allow the minor to be in a less confined circumstance as a result of his offenses. I don't know that that's possible when you have someone like this. I also think there's a value to a deterrence message to people in this community. You do not go to school and end up in a brawl which results in teachers being battered. That's just not acceptable. It's not done. And it's not going to be something that we're going to accept at Danville High School or any other school in Vermilion County, to be quite frank. So, from my point of view, the best interest of the public, as well as the minor, is to make him a ward of the Court, sentence him to the Illinois Department of Corrections [*sic*] for an indeterminate amount of time, not to exceed the maximum of the offense of the Class 3, or his age 21, whichever first occurs."

However, respondent's social history report confirmed defense counsel's representation that the other juveniles charged for their involvement in the brawl received significantly less harsh punishments, if they were punished at all. Savion C. was placed on six months of probation (case No. 12-JD-182). Trenton J. was placed on 12 months of supervision (case No. 12-JD-188). JoeVionte S. (case No. 12-JD-183), Jermaine W. (case No. 12-JD-184), and Terrance T. (case No. 12-JD-187) all had their cases dismissed. We also note "Mr. [H.]," whom McGuire also indicated threw chairs that hit him, was not listed on the social history report as being charged. In addition, the social history report does not show any assessments or evaluations were done of the minor prior to sentencing.

¶ 15   On June 11, 2013, respondent filed an amended motion to reconsider sentence. On July 8, 2013, the trial court held a hearing on the amended motion to reconsider sentence. Respondent's trial counsel asked the trial court to "take into consideration some of the factors that we were not able to present at the sentencing hearing since I myself was not personally present." The amended motion stated respondent's trial counsel was unavailable to attend the sentencing hearing because of illness, and the attorney who appeared on behalf of respondent at the hearing was not fully apprised of all of the facts in the case, "including possible factors in mitigation or custodial alternatives."

¶ 16   Respondent's counsel also told the trial court a custodian for respondent had been identified. Kenneth Porter, a minister at New Jerusalem Church of Christ and respondent's uncle, testified he would be willing to have respondent reside with him if respondent was placed on probation and would be able to provide for respondent. Porter testified part of his ministry was to teach young people about changing their mind-set about life. He also stated

he could ensure respondent took part in activities at his church and at the local Young Men's Christian Association (YMCA), where his family belonged.

¶ 17    In addition, Porter testified he thought respondent would listen to him and follow his rules based on his past experience with respondent. He also believed he could keep respondent apart from his peer group. When asked what would happen if respondent did not follow his rules or the rules set out by the court, Porter stated he would call the probation office and let them know what respondent was doing. According to Porter, "I'm not gonna hold back anything or be a person that's gonna agree to a lot of going against the law and all that old junk, I'm not gonna get myself in that."

¶ 18    Respondent testified he had been in the DOJJ for two months. At that time, he was in a "well-behaved unit." Respondent's counsel told the trial court she independently confirmed respondent was being housed in a "step[-]down unit."

¶ 19    Respondent's counsel asked the trial court to vacate the DOJJ sentence and place respondent on probation with whatever terms and conditions the court believed would be in respondent's best interests and the best interests of the community. The State asked the court to maintain its previous ruling.

¶ 20    The trial court then stated:

"[E]ach case has to be looked at on its own. And the thing that disturbed me is aggravated battery in a school setting. I guess it's hard for me to understand that when you go to school you're there for a reason. It's like you go to church for a reason, you go to school for a reason. And the fact that we only had one case addressing that kind of behavior is kind of miraculous when you look at the attachment to the presentence report, the last page starting with an offense of 9/7/10 at Danville High School and then they just work their way up each page. So all through 2010, all through 2011, 2012 and up to 2013 this young man is showing absolute and total disrespect to the people at Danville High School. Was in altercations that they didn't call the police on. Refused to follow directions. Refused to show even a little bit of respect for those in authority, and refused to comply basically with the rules and regulations of the school. So do I think that he's gonna all of a sudden come back and live with this lovely gentleman and become a law-abiding citizen. No. And with all due respect, where were you before, sir, [while] this has been going on."

The court then stated it believed respondent needed to remain a ward of the court and remain in the DOJJ "for as long as they're willing to keep him." According to the court, "If [the DOJJ] think[s] he's doing so great I'm sure they'll release him soon because that's normally what we see, in any event, and I still do not believe that a community[-]based sentence is in the best interests of the public or the minor."

¶ 21    This appeal followed.


¶ 22                                II. ANALYSIS
¶ 23                             A. Charging Instrument
¶ 24    Respondent first argues the petition for wardship was inadequate because it did not

sufficiently inform respondent of the "precise offense charged so as to allow preparation of a defense and to be a bar to future prosecution arising out of the same conduct." Respondent acknowledges he did not challenge the charging instrument in the trial court.

"When the sufficiency of the charging instrument is attacked in a pretrial motion, the standard of review is to determine whether the instrument *strictly* complies with the requirements of section 111-3 of the Code of Criminal Procedure of 1963 [(Code)] (Ill. Rev. Stat. 1991, ch. 38, par. 111-3(a)). [Citation.] Contrarily, when, as here, the sufficiency of a charging instrument is attacked for the first time on appeal, the standard of review is more liberal. In such a case, it is sufficient that the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (Emphasis in original.) *People v. DiLorenzo*, 169 Ill. 2d 318, 321-22, 662 N.E.2d 412, 413-14 (1996).

We need not determine whether the charging instrument could have survived a pretrial motion to dismiss "or even whether its form tracks precisely the provisions of section 111-3 [of the Code]." *DiLorenzo*, 169 Ill. 2d at 323, 662 N.E.2d at 414; see 725 ILCS 5/111-3 (West 2012).

¶ 25    The petition and attached fact sheet in question in this case were sufficient to apprise respondent of the precise offense charged with enough specificity to allow him to prepare a defense. Count I of the petition for adjudication alleged in pertinent part:

"COUNT I–AGGRAVATED BATTERY–TEACHER–CLASS 3

On or about September 10, 2012, in Vermilion County, State of Illinois, Raheem [M.], in committing a Battery, knew the individual harmed, Robert McGuire, to be a teacher or other person employed in any school and such teacher or other employee was upon the grounds of a school *** , in violation of 720 ILCS 5/12-3.05(d)(3) [(West 2012)]."

Count II charged respondent with disorderly conduct, alleging on September 10, 2012, defendant threw "chairs in the cafeteria" and attempted to fight other students in such an unreasonable manner as to alarm or disturb Thomas Lane, Larry Withers, and Robert McGuire and to provoke a breach of the peace in violation of section 26-1 of the Criminal Code (720 ILCS 5/26-1(a)(1) (West 2012)).

¶ 26    We agree with the State respondent's reliance on *People v. Lutz*, 73 Ill. 2d 204, 383 N.E.2d 171 (1978), is misplaced because the defendant in that case filed a motion in arrest of judgment pursuant to section 116-2 of the Code (Ill. Rev. Stat. 1973, ch. 38, ¶ 116-2) in the trial court challenging the sufficiency of the indictment. At that time, section 116-2 stated:

"(a) A written motion in arrest of judgment shall be filed by the defendant within 30 days following the entry of a verdict or finding of guilty. Reasonable notice of the motion shall be served upon the State.

(b) The court shall grant the motion when:

(1) The indictment, information or complaint does not charge an offense, or

(2) The court is without jurisdiction of the cause." Ill. Rev. Stat. 1973, ch. 38, ¶ 116-2.

The supreme court noted, " 'No similar statutory provision was made for nonwaiver at the appellate level ***.' " *Lutz*, 73 Ill. 2d at 210, 383 N.E.2d at 173 (quoting *People v. Gilmore*, 63 Ill. 2d 23, 28, 344 N.E.2d 456, 459 (1976)). In addition, after *Lutz* was decided, section 116-2 was amended to include a subsection (c), which states:

"A motion in arrest of judgment attacking the indictment, information, or complaint on the ground that it does not charge an offense shall be denied if the indictment, information or complaint apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution out of the same conduct." 725 ILCS 5/116-2(c) (West 2012).

This language tracks the standard courts of review use when a defendant attacks the sufficiency of a charging instrument for the first time on appeal.

¶ 27 Respondent also relies in part on *People v. Hale*, 77 Ill. 2d 114, 395 N.E.2d 929 (1979), *People v. Gerdes*, 173 Ill. App. 3d 1024, 527 N.E.2d 1310 (1988), and *People v. Veile*, 109 Ill. App. 3d 847, 441 N.E.2d 149 (1982). However, the defendant in *Hale* filed a motion to dismiss on the ground the information was insufficient to state the offense of aggravated battery. *Hale*, 77 Ill. 2d at 115, 395 N.E.2d at 930. The defendant in *Gerdes* also filed a motion to dismiss the information in that case because it failed to state an offense. *Gerdes*, 173 Ill. App. 3d at 1026, 527 N.E.2d at 1312. The defendant in *Veile* did not attack the specificity of the charging instrument. Instead, the defendant's "chief contention [was] that the State failed to prove bodily harm in the simple battery which was the predicate for aggravated battery." *Veile*, 109 Ill. App. 3d at 848, 441 N.E.2d at 150. None of these cases assist respondent in establishing the charges in this case were not sufficient to allow him to prepare a defense.

¶ 28 Respondent acknowledges the charging instrument was not attacked in the trial court and this court must determine whether he was prejudiced in the preparation of his defense as a result of the way the charge was drafted. *People v. Thingvold*, 145 Ill. 2d 441, 448, 584 N.E.2d 89, 91 (1991).

¶ 29 From the trial transcript, it is clear respondent and his attorney were aware the basis of the charge was the throwing of a chair during the lunchroom brawl. Respondent admitted throwing a chair. However, respondent chose to argue the chair he threw did not hit McGuire. He did not argue lack of bodily harm. As a result, defendant was not prejudiced by the less-than-perfect charging instrument in establishing a defense to the charges in this case.

¶ 30 Respondent also argued the allegations in the petition were not sufficient to bar a future prosecution for the same actions. According to respondent, "Due to the inadequacy of the charge, nothing bars retrial for battery on any theory and for any contact or harm without lawful authority with Robert McGuire on September 10, 2013 [*sic*], in Vermilion County." We disagree. A defendant can establish he was already prosecuted on a certain set of facts by relying on the record in the earlier prosecution. *Gilmore*, 63 Ill. 2d at 30, 344 N.E.2d at 461. The evidence in the record clearly shows respondent was prosecuted for throwing a

chair in the Danville High School cafeteria on September 10, 2012. If a second prosecution were instituted, respondent could assert a defense of double jeopardy.

¶ 31                                    B. Sufficiency of the Evidence To Convict

¶ 32        Respondent alternatively argues the State failed to establish his guilt beyond a reasonable doubt of aggravated battery of a teacher. We will reject a challenge to the sufficiency of the evidence if any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114, 871 N.E.2d 728, 740 (2007). An appellate court will not retry a defendant when considering a challenge to the sufficiency of the evidence. *Id.* The State is given the benefit of all reasonable inferences, and the evidence is considered in the light most favorable to the prosecution. *Id.* at 116, 871 N.E.2d at 741.

¶ 33        "The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the trial court and jury that saw and heard the witnesses." *Id.* at 114-15, 871 N.E.2d at 740. That being said, "a conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Id.* at 115, 871 N.E.2d at 740. Our review "must include consideration of all of the evidence, not just the evidence convenient to the State's theory of the case." *Id.* at 117, 871 N.E.2d at 742. However, this does not require "a point-by-point discussion of every piece of evidence as well as every possible inference that could be drawn therefrom." *Id.*

¶ 34        Respondent first cites *People v. Smith*, 183 Ill. 2d 425, 431, 701 N.E.2d 1097, 1100 (1998), for the proposition a defendant's due process rights are violated when he is convicted for an offense on uncharged facts. In *Smith*, the State's felony murder charge did not specify which armed robbery was the basis for the charge. *Id.* The armed robbery charge in the case only referred to the armed robbery of a cash register on the upper floor of a business. *Id.*

¶ 35        The State argued the attempted armed robbery of a safe could be substituted for the armed robbery of the cash register as the predicate offense for the felony murder charge. *Id.* However, the supreme court disagreed, noting the State did not specifically charge the attempted robbery of the safe in the indictment and did not discuss the attempted safe robbery in its closing argument or mention the elements for that offense, instead focusing on the armed robbery of the cash register. In addition, the jury instructions for felony murder setting out the elements of armed robbery did not describe an attempted armed robbery of the safe. *Id.* "Thus, the jury instructions and the State's theory of the case demonstrate that the State believed that the armed robbery that was the predicate offense charged in the felony murder count was the armed robbery of Dominick Roti, and not the attempted armed robbery of the safe." *Id.*

¶ 36        The case *sub judice* is distinguishable from *Smith* because the State has not attempted to change the basis for the prosecution in this case. The State's theory of the case was, and still remains, respondent threw a chair that hit McGuire.

¶ 37        As we stated above, the charging instrument in this case was not well drafted. Further, neither the State nor defense counsel made an opening statement. Finally, in their closing

arguments, neither the State nor defense counsel made any kind of argument with regard to whether the aggravated battery resulted because McGuire suffered bodily harm or because being hit with the chair constituted physical contact of an insulting or provoking nature. For example, the State's argument in its entirety was as follows:

> "Yes, Your Honor. I would ask the court find the State has proven Count I and Count II beyond a reasonable doubt and ask that the court also take note of transferred intent. It doesn't matter who [respondent] threw the chair at. He admitted to throwing the chair. Thank you."

Defense counsel's entire argument was as follows:

> "Your Honor, I would ask the court take notice of the circumstances under which the chair was thrown. There was apparently a mob scene that involved several other individuals. While Mr. McGuire may have been struck by a chair, it was the testimony of Officer Weaver that he believed another student to be responsible for the chair being thrown. That was the chair that was observed. I would simply ask the court find the State has not met its burden."

In finding respondent guilty, while not specifically stating it was finding respondent caused McGuire bodily harm, the court did find McGuire "described the injuries that he sustained."

¶ 38   The State argues the evidence was sufficient to prove McGuire suffered bodily harm when he was hit by a chair respondent threw in his direction. We agree. As stated earlier, the evidence must be viewed in the light most favorable to the prosecution.

¶ 39   Respondent concedes "[u]nder the doctrine of transferred intent, [respondent] is responsible for causing the physical contact between the chair and Robert McGuire if the chair he threw hit McGuire." See *People v. Dorn*, 378 Ill. App. 3d 693, 698-99, 883 N.E.2d 584, 588 (2008). Respondent argues "[b]ecause chairs were thrown by more than one person, and no one could tell if [respondent's] chair hit McGuire, physical contact was not proved beyond a reasonable doubt." However, this argument overlooks McGuire's testimony respondent threw one of the chairs that struck him.

¶ 40   Respondent also argues the State did not establish beyond a reasonable doubt McGuire was harmed. When asked what specific injuries he recalled suffering, McGuire stated, "Probably minor bruises but no cuts." Respondent argues "[t]he use of the word 'probably' by McGuire demonstrates that he did not state unconditionally that he had been injured." We disagree. Viewing his testimony in the light most favorable to the State, the trier of fact, who was able to actually hear and see McGuire, could have easily interpreted this testimony to mean he had bruises, which would probably be characterized as minor, but no cuts. The term "bodily harm" encompasses even a temporary bruise. See *People v. Mays*, 91 Ill. 2d 251, 256, 437 N.E.2d 633, 635-36 (1982). We agree with the State the evidence was sufficient to prove beyond a reasonable doubt McGuire suffered bodily harm from respondent's battery.

¶ 41                                    C. Sentencing

¶ 42   Respondent next argues the trial court committed several sentencing errors, requiring his sentence to the DOJJ be vacated. Respondent makes the following arguments: the court erred

-10-

(1) as a matter of law in sending him to prison without first following the requirements found in section 5-750 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-750 (West 2012)); (2) in considering respondent's police contacts; and (3) in relying on several improper factors, including a factor inherent in the aggravated battery of a teacher offense, in sentencing respondent to the DOJJ.

¶ 43    Relying on *In re M.W.*, 232 Ill. 2d 408, 430, 905 N.E.2d 757, 772 (2009), the State argues respondent forfeited these arguments by failing to adequately raise them in the trial court. In *M.W.*, our supreme court stated:

> "In a criminal case, a defendant forfeits review of a claimed error if she does not object at trial and does not raise the issue in a posttrial motion. [Citation.] 'This principle encourages a defendant to raise issues before the trial court, thereby allowing the court to correct its errors *** and consequently precluding a defendant from obtaining a reversal through inaction.' [Citation.] This same forfeiture principle applies in proceedings under the Juvenile Court Act [citation], although no postadjudication motion is required in such cases [citation]." *Id.*

Other than the blanket statement arguing these claims were forfeited, the only specific argument on forfeiture made by the State relates to respondent's acquiescence to the trial court's consideration of his police contacts. In his reply brief, respondent "takes issue with the [S]tate's general statement that all the respondent's sentencing arguments are forfeited because they were not raised 'adequately below.' " The State's blanket forfeiture argument is not much help to this court.

¶ 44    We review respondent's arguments out of turn, first reviewing respondent's argument the trial court erred in considering respondent's prior police contacts. Citing recent developments in the law affecting juvenile justice, respondent argues:

> "Based on reliability concerns, criminal courts have long been prohibited from considering mere arrests, charges, or police contacts in aggravation at sentencing. At the same time, however, such evidence has been deemed admissible in delinquency proceedings. The time has come to reconcile these two conflicting lines of cases and reject the admissibility of such unreliable evidence in delinquency court–especially in light of amendments to the [Juvenile Court Act] which both made delinquency proceedings more criminal in nature and expressly guaranteed juveniles the same or greater procedural rights as criminal defendants. The trial court in this case improperly relied on the mere existence of police contacts in committing Raheem [ ]M. to the DOJJ."

We disagree. In *In re Nathan A.C.*, 385 Ill. App. 3d 1063, 1077, 904 N.E.2d 112, 123 (2008), this court stated the trial court is permitted to consider "a number of factors, including prior arrests, station adjustments or curfew violations, and the social-investigation report when determining whether commitment is necessary." Regardless of any forfeiture of this argument, the trial court did not err in considering respondent's prior police contacts, as we continue to adhere to *Nathan A.C.*

¶ 45    We next consider respondent's argument the trial court erred as a matter of law in sending him to the DOJJ without first following the requirements found in section 5-750 of

the Juvenile Court Act (705 ILCS 405/5-750 (West 2012)). Section 5-750 states in part:

"[W]hen any delinquent has been adjudged a ward of the court under this Act, the court may commit him or her to the Department of Juvenile Justice, if it finds that (a) his or her parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5-740, or it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent; *and (b) commitment to the Department of Juvenile Justice is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement.*" (Emphasis added.) 705 ILCS 405/5-750(1)(a), (b) (West 2012).

¶ 46    According to respondent, "the [S]tate presented no evidence whatsoever of efforts to locate a less restrictive alternative in compliance with [s]ection 5-750(1)(b)." Respondent argues:

"No evidence was presented about community-based alternatives. The [social investigation report] did not suggest that anyone had made any investigation into alternatives. This failure to investigate alternatives violates 705 ILCS 405/5-750(1)(b) [(West 2012)], which requires at least an effort be made to determine if there are alternatives to [the] DOJJ. It follows, of course, that in the face of a lack of even a small effort to locate an alternative, the record is clear as to why those efforts failed."

¶ 47    We recognize the form sentencing order recites the trial court received and reviewed evidence concerning efforts to identify a less restrictive alternative to commitment in the DOJJ. However, the record before this court, which appears to be complete, contains no evidence regarding efforts to identify a less restrictive alternative to secure confinement, either in the social history report or at the sentencing hearing. The form sentencing order also states the court reviewed and considered results of assessments of the minor. However, the minor was not evaluated or assessed in any manner to determine whether community-based services could eliminate any perceived need to incarcerate respondent. Last, the form sentencing order states the court reviewed community-based services provided to the minor and compliance with and the outcome of those services. However, no services were provided to the minor, so he had no opportunity to demonstrate compliance.

¶ 48    The State points out the social history report included a section about available community resources if respondent was sentenced to probation, including substance abuse treatment at Prairie Center and counseling services at Crosspoint or the Center for Children's Services. However, it appears these organizations were never even contacted with regard to respondent or whether they could serve as an alternative to confinement.

¶ 49    The State also points to the student discipline report attached to the social investigation report. According to the State's brief, the trial court determined respondent's aggressive attitude and refusal to show respect to authority figures made a community-based sentence futile. However, the court was not given, nor did it ask for, any evidence regarding efforts

made to find a less restrictive alternative to secured confinement. Pursuant to the statute, the trial court had to consider *evidence* efforts were made to find a less restrictive alternative to secure confinement before it could sentence respondent to the DOJJ. While the court stated it had to look at some alternative to secure confinement, no evidence was presented to the court about any efforts made to find possible alternatives.

¶ 50    The record is clear the trial court failed to follow the mandate of section 5-750 prior to committing respondent to the DOJJ. Prior to committing a juvenile to the DOJJ, a trial court must have before it evidence of efforts made to locate less restrictive alternatives to secure confinement and the court must state the reasons why said efforts were unsuccessful. This is not some *pro forma* statement to be satisfied by including the language of the statute in a form sentencing order. Actual efforts must be made, evidence of those efforts must be presented to the court, and, if those efforts prove unsuccessful, an explanation must be given why the efforts were unsuccessful. None of this was done prior to respondent's commitment to the DOJJ.

¶ 51    The State contends respondent forfeited this argument because it was not raised "adequately below." Any sentencing issue not raised in a postsentencing motion is forfeited on appeal. See *People v. Reed*, 177 Ill. 2d 389, 390, 686 N.E.2d 584, 584 (1997); see also *People v. Heider*, 231 Ill. 2d 1, 15, 896 N.E.2d 239, 247 (2008). In *People v. Rathbone*, 345 Ill. App. 3d 305, 310, 802 N.E.2d 333, 338 (2003), this court acknowledged "a number of appellate court cases *** assert that alleged sentencing errors are reviewable as plain error when they involve a misapplication of law because the right to be sentenced lawfully is substantial in that it affects a defendant's fundamental right to liberty." This court stated:

> "We reject this approach because it is not consistent with (1) the rule of law set forth in *Reed*, (2) its underlying principles, or (3) the intent of the legislature. If all matters related to a 'misapplication of law' at sentencing affect a defendant's fundamental right to liberty and are thus reviewable as plain error, then the plain[-]error exception essentially swallows the forfeiture rule, rendering meaningless the requirement contained in section 5-8-1(c) of the Unified Code and enforced by the supreme court in *Reed*." (Emphasis omitted.) *Id.* at 311, 802 N.E.2d at 338.

However, this court then made clear sentencing errors can still be reviewed for plain error as long as the reviewing court first considers "whether the evidence was closely balanced and whether the error was sufficiently grave that the defendant was deprived of a fair sentencing hearing." *Id.* at 312, 802 N.E.2d at 339.

¶ 52    We note the State made no specific argument why respondent forfeited this argument. However, even if respondent forfeited this argument, we find the trial court's failure to require and consider evidence of less restrictive alternatives to secure confinement, efforts made to find less restrictive alternatives, and evidence why those efforts were unsuccessful, if so, before sentencing respondent to the DOJJ constitutes such a serious error we excuse forfeiture based on the second prong of plain-error analysis.

¶ 53    Section 5-750 of the Juvenile Court Act (705 ILCS 405/5-750 (West 2012)) mandates no juvenile shall be sentenced to the DOJJ unless the trial court has considered evidence regarding less restrictive alternatives. Prior to January 1, 2012, this was not required.

However, the General Assembly made clear with the passage of Public Act 97-362 (Pub. Act 97-362, § 5 (eff. Jan. 1, 2012)), a juvenile shall not be sentenced to the DOJJ without evidence before the sentencing judge of less restrictive alternatives, except in the case of murder. The court must have evidence efforts were made to locate a less restrictive alternative and must also have evidence of the reasons why the efforts made were unsuccessful. These statutory requirements ensure trial courts are treating the DOJJ sentences as a last resort.

¶ 54    The General Assembly has determined juveniles should only be sentenced to the DOJJ when a fully informed decision can be made such a sentence is the least restrictive alternative available for a juvenile who is not charged with murder. The court in this case had no evidence of less restrictive alternatives to a DOJJ sentence, nor did it require any evidence of efforts made to find less restrictive alternatives to a DOJJ sentence before sentencing respondent to the DOJJ. Even at the hearing on the motion to reconsider sentence, the trial court failed to explain why the alternative to incarceration presented by defense counsel was not acceptable.

¶ 55    Based on the facts in this case, the trial court's failure to follow the dictates of section 5-750 (705 ILCS 405/5-750 (West 2012)) before sentencing respondent to the DOJJ requires us to excuse any forfeiture under the second prong of the plain-error analysis. This is especially true considering respondent has no other means of relief from this error. Our supreme court has never addressed whether a juvenile defendant may file a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2012)), despite appellate courts holding juveniles are not entitled to relief pursuant to the Post-Conviction Hearing Act. *In re J.T.*, 221 Ill. 2d 338, 348-49, 851 N.E.2d 1, 7 (2006); *In re A.W.H.*, 95 Ill. App. 3d 1106, 1107, 420 N.E.2d 1041, 1042 (1981) (Fifth District).

¶ 56    As we are remanding this case for a new dispositional hearing, we feel the need to address other issues raised by respondent that might arise at the new dispositional hearing and note our concern on other issues. We are troubled by the trial court's initial decision to detain respondent after the trial. The State did not ask for respondent to be detained prior to sentencing. However, the trial court stated:

"I frankly don't understand why you weren't detained at the commencement of the case, but that wasn't my call. So today I am going to detain you, finding a matter of immediate and urgent necessity and in the best interests of the public and the minor involved. That will be until sentencing."

The court made this detention decision without much background information regarding respondent other than the fact he had been expelled from school as a result of the case before it. None of the witnesses at the trial testified they had any prior disciplinary encounters with respondent. The record also reflects he had not been in juvenile court in any prior cases. He lived with his mother and stepfather, with whom he had a good relationship. Further, this was not a case where defendant set out intentionally to harm a teacher or school employee, or even a situation where the victim suffered serious injuries. He tossed a chair at a student, and the chair made incidental contact with the teacher.

¶ 57    As a result of the trial court's detention order on April 22, 2013, respondent was detained

-14-

until the sentencing hearing on May 28, 2013. He was precluded from taking his scheduled GED examination. The juvenile detention center report provided to the court prior to the sentencing hearing graded respondent's ability to control his temper, cooperate with the school program, behave in the classroom, and show classroom initiative as positive. His ability to accept authority was graded as fair, and his ability to cooperate and communicate with staff and his ability to relate with detainees were both graded as poor.

¶ 58    Respondent committed what normally would be classified as a battery. The victim of the battery, the school monitor, suffered minor injuries and was not the intended victim. Respondent is guilty of an aggravated battery due to the victim's status and the location of the incident.

¶ 59    The General Assembly already took into consideration the disturbing nature of batteries committed on school personnel on school grounds when it elevated what would otherwise be a simple battery, a Class A misdemeanor (720 ILCS 5/12-3(b) (West 2012)), to an aggravated battery, a Class 3 felony (720 ILCS 5/12-3.05(d)(3), (h) (West 2012)). The trial court should not have allowed these same factors, *i.e.*, the location of the incident and the victim's status, to also impact its sentencing judgment as aggravating factors. A trial court may not consider a factor inherent in the charged offense as a factor in aggravation at sentencing. *People v. Conover*, 84 Ill. 2d 400, 404, 419 N.E.2d 906, 908 (1981).

¶ 60    We are also disturbed by the emphasis the trial court placed on respondent's biological father's criminal history. The State argues it was respondent's own attorney who raised the topic and prompted the court to comment. However, we note the biological father's criminal history was exhaustively covered in the social history investigative report, which was prepared prior to the sentencing hearing. Regardless of who raised the issue or failed to object to the information, a defendant should not be punished for the crimes of his father absent the defendant's involvement in those same crimes. We do not see the relevance of the criminal history of respondent's biological father, especially when the evidence presented showed respondent had no contact with his father, who was incarcerated out of state.

¶ 61    We recognize the safety and security of our schools are important priorities and in no way condone respondent's conduct. Nevertheless, considering the facts in this case, where the trial court received no evidence about alternatives to confinement prior to sentencing respondent to the DOJJ, as required by statute, we have no choice but to vacate respondent's commitment to the DOJJ. On remand, the trial court shall determine whether confinement in the DOJJ is the least restrictive alternative based on evidence presented of alternatives to the DOJJ and efforts made to find alternatives. If no alternative is successfully located, the court shall consider evidence of why those efforts were unsuccessful.

¶ 62                                    D. Fines

¶ 63    Respondent takes issue with three fines imposed by the circuit clerk: (1) a $4 "Youth Diversion" fine, (2) a $3.80 drug court fine, and (3) a $15 State Police operations fine. According to respondent, the circuit clerk had no authority to assess these fines. Further, no statutory authority exists for imposing these fines against a juvenile following a delinquency proceeding. The State concedes the three assessments should be vacated because "none of

-15-

the pertinent statutes authorize those fines for adjudicated delinquent minors in cases brought under the Juvenile Court Act of 1987." See 55 ILCS 5/5-1101(e), (f) (West 2012); 705 ILCS 105/27.3a(1.5) (West 2012). We accept the State's concession and vacate the three fines.

¶ 64                                III. CONCLUSION

¶ 65       For the reasons stated, we affirm respondent's adjudication of delinquency but vacate respondent's sentence and fines and remand for a new sentencing hearing

.

¶ 66       Affirmed in part and vacated in part; cause remanded with directions.


¶ 67       JUSTICE STEIGMANN, dissenting.

¶ 68       Like my distinguished colleagues in the majority, I agree that the sentencing hearing the trial court conducted in this case was lacking. The record is not clear to what extent, if at all, the court considered (1) evidence of less restrictive alternatives to a sentence to DOJJ or (2) evidence of efforts made that were unsuccessful regarding a possible less restrictive alternative. The majority appropriately cites *In re M.W.* and *Rathbone* regarding when the plain-error doctrine should apply at a sentencing hearing and concludes that it should apply in this case. Based upon my understanding of this record, I disagree that the application of the plain-error doctrine is appropriate. Accordingly, I respectfully dissent.