# Illinois Official Reports

## Appellate Court

*In re Ashley C.*, 2014 IL App (4th) 131014

| | |
|---|---|
| Appellate Court Caption | In re: ASHLEY C., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. ASHLEY C., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-1014 |
| Filed | April 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court satisfied the statutory requirements of the Juvenile Court Act in sentencing respondent minor to the Department of Juvenile Justice, especially in view of the fact that the court had exhausted all local resources available for respondent and incarceration was necessary to protect the public; furthermore, the trial court did not err in including the criminal histories of respondent's parents and stepfather, including the information as to their incarceration, in the social history report that was considered in connection with respondent's sentencing, since that information was relevant to the issue of whether respondent could be placed with them as an alternative to being incarcerated. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 13-JD-61; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Jacqueline L. Bullard, all of State Appellate Defender's Office, of Springfield, for appellant.

Seth Uphoff, State's Attorney, of Pontiac (Patrick Delfino, David J. Robinson, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion. Justices Knecht and Steigmann concurred in the judgment and opinion.

## OPINION

¶ 1    In September 2013, respondent, Ashley C. (born February 4, 1997), entered a plea of guilty to six charges: (1) residential burglary (720 ILCS 5/19-3(a) (West 2012)), (2) two counts of burglary of two separate motor vehicles (720 ILCS 5/19-1(a) (West 2012)), (3) unlawful possession of a stolen or converted vehicle (625 ILCS 5/4-103(a)(1) (West 2012)), and (4) two counts of theft under $500 (720 ILCS 5/16-1(a)(1)(A) (West 2012)). In addition, her admissions to these six offenses served as the basis for petitions to revoke respondent's probation in three other cases, Livingston County case Nos. 11-JD-50, 11-JD-92, and 12-JD-77. In October 2013, the trial court sentenced respondent to the Illinois Department of Juvenile Justice (DOJJ) for an indeterminate term not to exceed respondent's twenty-first birthday. Respondent appeals, arguing (1) her sentencing hearing failed to comport with the statutory requirements for committing minors to DOJJ; (2) the social history report prepared by probation should not have included the criminal histories of her father, mother, and stepfather; and (3) the social history report should not have listed a sentence of secure detention for up to six months for contempt as an available disposition.

¶ 2    We affirm the circuit court's judgment.

¶ 3                              I. BACKGROUND

¶ 4    The facts discussed below are gleaned from respondent's brief and the record submitted with this appeal. When respondent was age 14, the State filed a three-count petition (No. 11-JD-50) charging her with two counts of theft of alcohol from Walmart (720 ILCS 5/16A-3(a) (West 2010)) and one count of unlawful consumption of alcohol (235 ILCS 5/6-20(e) (West 2010)), occurring on April 23, 2011. In September 2011, the State filed a petition (No. 11-JD-92) charging respondent with committing two counts of criminal trespass to a motor vehicle on July 23, 2011. 720 ILCS 5/21-2 (West 2010). In December 2011, respondent admitted the charges in both Nos. 11-JD-50 and 11-JD-92 and was placed on

probation for two years. Prior to her sentence in these two cases, respondent entered residential substance-abuse treatment at Chestnut Health Systems in Maryville, Illinois. However, on October 21, 2011, just two weeks after beginning treatment, respondent left the program against staff advice. Over the course of 2012, respondent started and/or completed three substance-abuse evaluations. She was discharged unsuccessfully once for missing too many appointments prior to going to detention. She was unable to complete "Teen Group" because she was once again in detention. She completed her fourth evaluation in October 2012, with a recommendation of no further treatment.

¶ 5    The social history report reflects during 2011 respondent was involved with counseling through "Project Oz" due to missing school and family issues. Following her sentence of probation, respondent began mental-health counseling at the Institute for Human Resources (IHR) in January 2012 and continued to receive mental-health treatment through the course of all further delinquency proceedings. Through IHR, respondent became involved with Screening, Assessment, and Support Services (SASS) for the "normal time frame," returning to regular counseling thereafter.

¶ 6    In August 2012, a new petition was filed, Livingston County case No. 12-JD-77, charging respondent with committing burglary of a motor vehicle on July 9, 2012, and an unrelated theft on August 2, 2012. She admitted committing these offenses and was sentenced to a two-year term of probation. While on probation in Nos. 11-JD-50, 11-JD-92, and 12-JD-77, respondent committed the six offenses that are the subject of this appeal.

¶ 7    At the August 2013 detention hearing in the instant case, the State represented on October 14, 2013, in Fairbury, Illinois, respondent entered a Dodge Durango owned by Bradley H. Respondent stated to police at the time she entered the vehicle, she intended to take it. The keys were in the console. She drove the vehicle to Pontiac, Illinois, where she entered a second vehicle, belonging to Amber W. (It should be noted respondent did not have a driver's license.) While inside Amber W.'s vehicle, respondent took a wallet and checkbook belonging to Amber W. Respondent told police she attempted to burglarize another vehicle while in Pontiac.

¶ 8    Respondent then drove back to Fairbury in the Dodge Durango, hitting a vehicle that was in a parking lot. She left the Durango near a church, where it was later found. Through their investigation, the police determined respondent may have stolen the Durango. They went to respondent's residence and found Amber W.'s wallet and the keys to the Durango. In addition, police found a black Hewlett-Packard laptop computer that Levi C. had recently reported stolen from his home. Respondent admitted entering Levi C.'s residence and taking the computer. Respondent was detained. In September 2013, respondent pleaded guilty to all six charges and admitted she violated her probation in case Nos. 11-JD-50, 11-JD-92, and 12-JD-77.

¶ 9    At the October 2013 sentencing hearing, the State recommended respondent be discharged unsuccessfully in case Nos. 11-JD-50, 11-JD-92, and 12-JD-77. The trial court accepted the State's recommendation and discharged respondent unsuccessfully from her probation. Thus, those cases are not included in respondent's appeal.

¶ 10    With respect to the six remaining charges, the trial court considered the social history report prepared by probation. In addition to the services previously offered to respondent as outlined above, the report reflected respondent had been evaluated for the Mental Health Juvenile Justice program (MHJJ) and would qualify for services through that program if she

was released. The report reflected respondent had been living with her grandmother, as her mother and stepfather were both currently incarcerated in the Department of Corrections. Respondent's father lived in Louisiana. He indicated a willingness to have respondent live with him, but since he lived out of state, he was not sure the trial court would agree. Respondent had not seen her father in three or four years and had talked to him only a couple of times a year. Respondent had no relationship whatsoever with her father for the first six years of her life.

¶ 11 At the time respondent was arrested and detained on the current charges, her grandmother was unwilling to have respondent return to her home, stating she could not control respondent any longer. Moreover, respondent indicated she did not want to live with her grandmother anymore. By the time of the sentencing hearing, however, respondent's grandmother had relented and expressed willingness to have respondent live with her on electronic monitoring.

¶ 12 The report indicated respondent had attendance issues at school. She was failing her classes during high school because she missed school frequently and failed to make up her homework. Respondent was suspended on several occasions for various reasons, including smoking in the bathroom and being "high" at school in 2011. Moreover, while detained awaiting sentencing, respondent stayed in her cell, refusing to attend school.

¶ 13 In addition to the social history report, the trial court considered a memorandum prepared by the State regarding programs and services available to respondent through DOJJ.

¶ 14 The State recommended commitment to DOJJ based on the following: (1) respondent's significant prior criminal history; (2) the serious nature of the current offenses, *i.e.*, residential burglary, two burglaries, and possession of a stolen vehicle; (3) respondent's commission of the current offenses while on probation; (4) her poor attendance at school; (5) respondent's failure to take advantage of services offered to her; (6) her endangering the community when she drove, unlicensed, a stolen vehicle from Fairbury to Pontiac and back; and (7) community-based sentencing had been ineffective in preventing respondent from re-offending.

¶ 15 Defense counsel argued a commitment to DOJJ was not appropriate for the following reasons: (1) respondent's latest detention for 77 days convinced her she could comply with probation, (2) respondent was on medication for depression, (3) the current offenses were not crimes of violence, (4) statistics show recidivism is high for people who go to the Department of Corrections, and (5) electronic monitoring with a term of probation would allow respondent to stay in her community.

¶ 16 In sentencing respondent, the trial court noted it had tried to maintain a community-based sentence with respondent's three prior cases. Pursuant to those sentences, respondent was involved with SASS, drug treatment, and mental-health treatment, and the court tried to keep respondent in school. The court noted the escalating nature of respondent's crimes, from retail theft to residential burglary. The court recognized the risk to the public of respondent's conduct and the fact all local resources and services had been exhausted.

¶ 17 Recognizing incarceration was not ideal, the trial court stated:

"But when I weigh all of the factors in this case, I do, and consider all of the factors I am to consider[,] including not just the aggravating and mitigating factors[,] but the community[-]based services that have been provided, that are still available, the services available through the [DOJJ], the other information set forth in the social investigation, I do find that it is necessary for the protection, first of all, of the public

from the consequences of your criminal behavior but[,] more importantly[,] that there's just nothing left in the community that can overcome the obstacles I think that you have put up.

So, I think that we have made every effort. Probation has made every effort. We have exhausted the local resources. The resources through the [DOJJ] I believe will meet your needs in terms not only of your education but also of treatment for your, any mental[-]health issues that remain unaddressed.

So for these reasons and primarily for the protection of the public, I am going to sentence you to the [DOJJ] on Counts 1, 2, 3 and 4. It would be a conviction only on Counts 5 and 6."

¶ 18    This appeal followed.

¶ 19                                II. ANALYSIS
¶ 20                    A. Respondent's Sentencing Hearing
¶ 21    Respondent contends the trial court erred when it failed to comply with the statutory requirements of section 5-750 of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/5-750 (West 2012)) prior to sentencing respondent to DOJJ.

¶ 22    A trial court's decision to send a minor to DOJJ is reviewed for an abuse of discretion. *In re M.Z.*, 296 Ill. App. 3d 669, 674, 695 N.E.2d 587, 591 (1998). The question of whether the court complied with statutory requirements is a question of law we review *de novo*. *In re Raheem M.*, 2013 IL App (4th) 130585, ¶ 45, 1 N.E.3d 86.

¶ 23    Before sentencing a minor to DOJJ, section 5-750 of the Juvenile Act requires, *inter alia*, the court to find commitment to DOJJ is the "least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement." 705 ILCS 405/5-750(1)(b) (West 2012).

¶ 24    In making a decision to commit a minor, the statute further requires the trial court to:
    "[M]ake a finding that secure confinement is necessary, following a review of the following individualized factors:
        (A) Age of the minor.
        (B) Criminal background of the minor.
        (C) Review of results of any assessments of the minor, including child centered assessments such as the CANS.
        (D) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.
        (E) Physical, mental and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what services were provided and whether the minor was compliant with services.
        (F) Community based services that have been provided to the minor, and whether the minor was compliant with the services, and the reason the services were unsuccessful.

(G) Services within the [DOJJ] that will meet the individualized needs of the minor." 705 ILCS 405/5-750(1)(b)(A) to (G) (West 2012).

¶ 25    Respondent contends the trial court was presented with no evidence she ever completed substance-abuse treatment as required by the sentencing statute (705 ILCS 405/5-750(1)(b)(F) (West 2012)). Respondent argues there was no evidence of any type of an assessment, much less a substance-abuse assessment, conducted in conjunction with the decision to commit respondent to DOJJ. Respondent contends the court erred in failing to consider residential substance-abuse treatment as a less-restrictive alternative to secure confinement. Respondent relies on our decision in *Raheem M.*, 2013 IL App (4th) 130585, 1 N.E.3d 86, as support for her argument.

¶ 26    *Raheem M.* is clearly distinguishable. First, the respondent in *Raheem M.* had never been charged previously with a criminal offense. *Id.* ¶ 12, 1 N.E.3d 86. Raheem M. had never had a community-based sentence. *Id.* His offense would have been a misdemeanor but for the incidental contact with a lunchroom monitor. *Id.* ¶ 56, 1 N.E.3d 86. Raheem M. was not assessed or evaluated in any manner to determine whether community-based services could eliminate any perceived need to incarcerate him. *Id.* ¶ 47, 1 N.E.3d 86. Raheem M.'s uncle was willing to have Raheem live with him and assured the court he would provide for him and enroll him in church and community activities. *Id.* ¶ 16, 1 N.E.3d 86. The court failed to explain why this alternative to incarceration was not acceptable. *Id.* ¶ 54, 1 N.E.3d 86.

¶ 27    Here, Ashley C. was on her fourth juvenile adjudication. The trial judge, who had worked over the years to keep respondent in the community, was familiar with respondent and the services both available and offered to respondent. The court had placed respondent on probation for five misdemeanors in two separate cases in 2011. In 2012, the court again placed respondent on probation, this time for a felony, burglary. During these periods of probation, respondent was evaluated four times for substance-abuse treatment. She left in-patient treatment against staff advice, missed appointments for her evaluations, and failed to complete evaluations because she was detained as a result of her criminal conduct. The court was aware of respondent's mental health history and that she had counseled with Project Oz, IHR, and SASS. While on probation in her three prior cases, respondent committed four new felonies, including residential burglary and stealing a car. Without ever having a driver's license, she drove the stolen vehicle, crashing it into another vehicle in a parking lot. Respondent is clearly a danger to the public.

¶ 28    Moreover, the trial court was aware respondent had been evaluated for the MHJJ program and qualified for services through that program. Additionally, the social history report reflected respondent refused to leave her cell to attend school while in detention. Contrary to respondent's arguments, the court was well-versed on respondent's criminal and social history, was aware of respondent's multiple and diverse evaluations, and was aware of the community-based services that had been provided to respondent and that were still available. After having made every effort to keep respondent in the community for over two years, the court recognized all local resources had been exhausted and the protection of the public necessitated respondent's incarceration.

¶ 29    Respondent also argues there was insufficient evidence regarding programming available in DOJJ. The State presented a one-page summary of programs available at DOJJ based on conversations with four program administrators and the DOJJ website. The summary was admitted without objection and considered by the trial court. Not only did respondent indicate

she had no objection to the prosecutor's summary, she did not include this issue in her motion to reconsider her sentence. She has, therefore, forfeited this issue. *In re M.W.*, 232 Ill. 2d 408, 430, 905 N.E.2d 757, 772 (2009) (forfeiture applies in delinquency proceedings). Further, we will not subject this issue to plain-error analysis, as we find no error in the procedure used here.

¶ 30 We find the trial court complied with the statutory requirements of the Juvenile Act in sentencing respondent to DOJJ. Further, based on the record before us, it is clear the court did not abuse its discretion in committing respondent to DOJJ.

¶ 31 B. Respondent's Social History Report

¶ 32 Respondent also asks us to address the propriety of the social history report prepared for the sentencing hearing. Respondent contends it was error to include the criminal histories of her mother, father, and stepfather in the social history, citing our decision in *Raheem M.* for that proposition. We take this opportunity to clarify and distinguish *Raheem M.* In *Raheem M.*, defendant's father was incarcerated out of state. *Raheem M.*, 2013 IL App (4th) 130585, ¶ 60, 1 N.E.3d 86. Defendant had no contact with his father. *Id.* The social history contained two full pages of violent offenses the father had committed. *Id.* ¶ 14, 1 N.E.3d 86. The trial court linked the father's criminal history to Raheem's "mind-set," despite Raheem having no contact with his father, having been raised by his law-abiding mother. *Id.* ¶ 14, 60, 1 N.E.3d 86.

¶ 33 We did not mean to imply the criminal history of a minor's family members is irrelevant to a proper disposition. The case before us is a perfect example of why such information is relevant. Here, Ashley C.'s mother and stepfather were both incarcerated at the time of the sentencing hearing. Clearly, they could not provide an alternative to incarceration for respondent. Ashley had limited contact with her father, who lived in Louisiana. The existence of his criminal record also was relevant to whether he was a viable placement for respondent. The undue emphasis placed on Raheem's father's criminal history, where his father had not raised him and where Raheem had had no contact with his father, and the implicit imputation of those wrongs to Raheem distinguish that case from the one before us.

¶ 34 Respondent also challenges the social history report's suggestion of a contempt sentence as a viable disposition. There was no adjudication of contempt in this case and we will not give an advisory opinion on that issue. See *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99, 554 N.E.2d 206, 208 (1990).

¶ 35 III. CONCLUSION

¶ 36 We affirm the trial court's judgment and its sentence of respondent to DOJJ.

¶ 37 Affirmed.