2016 IL App (1st) 153257
No. 1-15-3257
June 7, 2016

SECOND DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* JUSTIN F., a Minor, | ) | Appeal from the |
| | ) | Court Circuit of |
| Respondent-Appellant | ) | Cook County. |
| | ) | |
| (The People of the State of Illinois, | ) | 15 JD 2216 |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | The Honorable |
| | ) | Stuart Lubin, |
| Justin F., | ) | Judge Presiding. |
| | ) | |
| Respondent-Appellant). | ) | |

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Pierce and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    This delinquency proceeding involves the interpretation of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-750 (West 2014)). The trial court found a minor, Justin F., guilty of aggravated assault and aggravated unlawful use of a weapon. At the sentencing hearing, the parties presented no evidence concerning the services available within the Department of Juvenile Justice (DoJJ) that could meet Justin's needs. The court committed Justin to the custody of DoJJ. We hold that the Act requires the court to hear and consider evidence concerning services available to minors committed to DoJJ and the minor's

particular needs before committing a minor to DoJJ. Accordingly, we vacate the order of commitment and remand for a new sentencing hearing.

¶ 2                                    BACKGROUND

¶ 3        After 3 p.m. on July 3, 2015, Javier Candelaria called police to report a crime. An officer spoke with Candelaria, and shortly thereafter another officer arrested Justin, then 17 years old. Later that same day, a manager of a storage facility near the scene of the arrest called police to tell them she found a handgun on the driveway of the storage facility. An officer inventoried the revolver.

¶ 4        The State filed a petition to declare Justin a ward of the court, alleging that he committed aggravated unlawful use of a weapon (AUUW), unlawful possession of a firearm (UPF), and aggravated assault.

¶ 5        Candelaria testified at trial that on July 3, 2015, he rode his bicycle past two young men who were arguing. One of the men, who Candelaria identified in court as Justin, looked at Candelaria and said, "Do you remember me? *** Yeah, you remember me." Candelaria testified that he had never seen Justin before. Justin reached towards his back pocket and started to pull out a black gun. Candelaria took off, turned a corner and called police.

¶ 6        Sergeant Jim Prah of the Chicago police department testified that he obtained from the storage facility the revolver another officer had picked up. He showed Justin the gun and asked if it belonged to him. Prah testified that Justin answered that a member of the Simon City Royals gang gave him the gun.

¶ 7        Justin presented no evidence. The trial court found Justin guilty of AUUW, UPF, and aggravated assault.

¶ 8        According to the social investigation report (SIR), Lakeshore Hospital and Hartgrove Hospital had treated Justin as a psychiatric inpatient for several hospitalizations between 2003 and 2007. The SIR also recorded Justin's prior convictions. In November 2013, a court sentenced Justin to 18 months probation for theft. Justin violated the terms of his probation in February, March and October 2014. The SIR said,

> "[Justin] has shown little commitment toward working with the Probation Department and the Juvenile Court over several years, despite several recommitments to probation, and continued interventions and attempts to engage him in services. The minor's gang activity has continued. He has continued to re-offend ***.
>
> *** [T]he minor is beyond the control of his mother and father and the Juvenile Court and poses a threat to himself, his neighbors and the community."

¶ 9        The SIR concluded, "This Probation Officer believes the only recourse is commitment to [DoJJ] for an indeterminate period."

¶ 10        The prosecutor supported the probation officer's recommendation. Defense counsel asked for referral to community-based resources. The trial court said, "I'm not giving him regular probation for this, obviously," and clarified that Justin had committed the aggravated assault while on parole for prior offenses. The trial court referred the case to intensive probation for evaluation.

¶ 11        At the next hearing, an officer from intensive probation supervision said he found Justin "inappropriate for the program." Again, the prosecutor agreed with the probation officer, and added that Justin had joined the Simon City Royals gang. Defense counsel requested that the

court sentence Justin to intensive probation. Counsel also argued that the SIR and evidence presented at the sentencing hearing did not meet statutory requirements:

"There hasn't been one fact put in this report, there's been no testimony as to what on earth could be provided at [DoJJ] that could help this young man, nothing.

This report talks about a young man who has some significant mental health issues. Where are the services at [DoJJ] that can address these issues? There's nothing mentioned."

¶ 12    The court said:

"At this point, it's a matter of public safety, which trumps all of these other things that you're talking about. He's been to the Department of Corrections twice. Now he's joined a gang. He's carrying a loaded weapon. He is too dangerous to be anyplace else.

\*\*\*

There's a finding of best interest and wardship. There's also a finding of inability and best interest. Commit to Department of Juvenile Justice. \*\*\* The maximum adult sentence would be three years in the penitentiary. He won't be doing that much."

¶ 13    The court gave Justin credit for 58 days in custody. Defense counsel sought leave to file a written motion to reconsider the sentence. The court said, "No, that's denied. I'm not reconsidering the sentence." On the written order for commitment to DoJJ, the court checked boxes indicating that it found "[s]ecure confinement is necessary after a review of the

following individualized factors," including "[s]ervice within DJJ will meet the needs of the minor." The court also checked a box indicating that "reasonable efforts were made to locate less restrictive alternatives to secure confinement and were unsuccessful." The court committed Justin to DoJJ for an indefinite term. Justin now appeals.

¶ 14                                    ANALYSIS

¶ 15        Justin argues (1) the evidence did not prove he committed an aggravated assault; (2) this court should vacate one of the weapons offenses because Justin committed only a single offense of possessing a weapon; (3) the sentencing hearing did not meet the requirements of the Act; and (4) the court miscounted the days Justin spent in custody.

¶ 16                               Aggravated Assault

¶ 17        We will not overturn the trial court's finding of delinquency based on aggravated assault "unless, after viewing the evidence in the light most favorable to the State, no rational fact finder could have found the offenses proved beyond a reasonable doubt." *In re Gino W.*, 354 Ill. App. 3d 775, 777 (2005). The State must prove that "(1) the respondent, without lawful authority, engaged in conduct that placed another in reasonable apprehension of receiving a battery, and (2) in committing the assault, the respondent used a deadly weapon." *Gino W.*, 354 Ill. App. 3d at 777. The trier of fact decides whether the respondent's acts placed the victim in reasonable apprehension of receiving a battery. *Gino W.*, 354 Ill. App. 3d at 777-78. "[R]easonable apprehension may be inferred from the evidence presented at trial, including the conduct of both the victim and the respondent." *Gino W.*, 354 Ill. App. 3d at 778.

¶ 18  Justin emphasizes that, according to Candelaria, Justin said only, "Do you remember me? *** Yeah, you remember me."  "[W]ords alone are not usually enough to constitute an assault. [Citation.]  Some action or condition must accompany those words before there is a violation of the statute." *People v. Floyd*, 278  Ill. App. 3d 568, 570-71 (1996).  Here, Justin accompanied his words with the action of starting to pull the gun out.  Candelaria did not testify that he saw Justin point the gun at him.  Candelaria left quickly and called police.

¶ 19  The words Justin used might not always convey a threat. "Words cannot always be read in the abstract and often acquire significant meaning from context, facial expression, tone, stress, posture, inflection, and like manifestations of the speaker and the factual circumstances of their delivery." *Clark v. United States*, 755 A.2d 1026, 1031 (D.C. 2000).

¶ 20  " 'Whether a given [statement] constitutes a threat is an issue of fact for the trial jury.' [*United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994).] The use of ambiguous language does not preclude a statement from being a threat. [Citations.] While the statement on its face may be susceptible to more than one interpretation, some factors not discernible from the record such as the tone of the defendant's voice or the credibility of the government's and [defendant's] witnesses, may legitimately lead a rational jury to find that [a] statement was a threat." *United States v. Fulmer*, 108 F.3d 1486, 1492 (1st Cir. 1997).

¶ 21  Under the circumstances, we find that the words Justin spoke, while reaching towards his back pocket and pulling out a gun, could take on a meaning that would legitimately lead a rational trier of fact to find that Candelaria reasonably feared that Justin would shoot him. Accordingly, we affirm the trial court's finding that Justin committed an aggravated assault. See *People v. Smith*, 52  Ill. App. 3d 53, 57 (1977).

¶ 22                                    One-Act, One Crime

¶ 23        The State concedes that Justin committed only one act of possessing a firearm, and therefore this court should vacate the less serious of the two convictions for gun possession. See *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). The legislature classified both AUUW and UPF as Class 4 felonies. 720 ILCS 5/24-1.6(d); 24-3.1(b) (West 2014). The State argues that AUUW counts as the more serious charge because a second conviction for AUUW counts as a Class 2 felony, while a second UPF conviction remains a Class 4 felony. 720 ILCS 5/24-1.6(d); 5/24-3.1(b) (West 2014). Justin raises no objection to the State's request that we vacate the UPF conviction. Therefore, applying the one-act, one-crime rule, we vacate the conviction for UPF.

¶ 24                                         Sentencing

¶ 25        Justin contends that the sentencing hearing did not meet the explicit requirements of the Act. Because the argument presents an issue of statutory interpretation, we review the trial court's ruling *de novo*. *In re Henry P.*, 2014 IL App (1st) 130241, ¶ 53. The Act provides, with exceptions not applicable here:

> "[W]hen any delinquent has been adjudged a ward of the court under this Act, the court may commit him or her to the Department of Juvenile Justice, if it finds that (a) *** it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent; and (b) commitment to the Department of Juvenile Justice is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less

7

restrictive alternative to secure confinement. Before the court commits a minor to the Department of Juvenile Justice, it shall make a finding that secure confinement is necessary, following a review of the following individualized factors:

(A) Age of the minor.

(B) Criminal background of the minor.

(C) Review of results of any assessments of the minor, including child centered assessments such as the CANS.

(D) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.

(E) Physical, mental and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what services were provided and whether the minor was compliant with services.

(F) Community based services that have been provided to the minor, and whether the minor was compliant with the services, and the reason the services were unsuccessful.

(G) Services within the [DoJJ] that will meet the individualized needs of the minor." 705 ILCS 405/5-750(1) (West 2014).

¶ 26   The trial court expressly found that "reasonable efforts were made to locate less restrictive alternatives to secure confinement and were unsuccessful." The trial court referred Justin to intensive probation supervision for evaluation. In light of Justin's three violations of

probation during 2014, and his commission of the offense at issue here while on parole, the court did not further consider the possibility of regular probation or any other alternative less restrictive than intensive probation. The probation officers working for intensive probation supervision told the court that Justin's prior violations of probation and parole made him "inappropriate for the program." We find that the court adequately inquired into less restrictive alternatives for Justin and the evidence supported the trial court's express finding that "reasonable efforts were made to locate less restrictive alternatives to secure confinement and were unsuccessful."

¶ 27     Justin also argues that the trial court failed to consider most of the individualized factors listed in the Act. The judge expressly took into account Justin's age, criminal background, and his failure to comply with probation and parole services provided to him. The record includes several assessments of Justin, and the court's comments indicate that it reviewed those assessments.

¶ 28     Justin's probation officer did not testify about Justin's educational background, his physical and emotional health, or the services available through DoJJ to meet Justin's individual needs. For those factors, the court needed to rely on the written reports included in the record.

¶ 29     A written report informed the court that Justin was "not currently enrolled in school. ***
[T]he minor was scheduled to report to Schurz HS High School for 2013 fall semester though never followed through." The report states that Justin was not a special education student, and Justin claimed that he could keep up with school work through an online program. The report also included information concerning Justin's psychiatric history, indicating that he

took medication for ADHD, oppositional defiant disorder, and depression. Justin also used marijuana and alcohol, and had a referral to TASC in September 2014. Justin failed to appear for the intake appointment.

¶ 30 Thus, we find some evidence in the record concerning all of the statutorily required factors, except one. No testimony or report in the record addresses the issue of whether DoJJ provides "[s]ervices *** that will meet the individualized needs of the minor." 705 ILCS 405/5-750(1)(G) (West 2014). Justin's attorney brought to the court's attention the absence of evidence concerning the availability of services for Justin in DoJJ. The court said, "At this point, it's a matter of public safety, which trumps all of these other things that you're talking about."

¶ 31 *In re Raheem M*., 2013 IL App (4th) 130585, bears some similarity to this case. On the sentencing form in *Raheem*, the trial court checked the box indicating that it considered less restrictive alternatives to confinement. The *Raheem* court said, "the record before this court *** contains no evidence regarding efforts to identify a less restrictive alternative to secure confinement, either in the social history report or at the sentencing hearing." *Raheem M*., 2013 IL App (4th) 130585, ¶ 47. Despite the box checked on the sentencing form, the record showed that the trial court had not complied with the Act. Here, similarly, the record includes no evidence concerning the availability of services for Justin in DoJJ, one of the factors the trial court needed to consider before committing Justin to DoJJ. Because the trial court failed to follow the mandate of section 5-750 of the Act, we must vacate the order for commitment and remand for full compliance with the Act. See *Raheem M*., 2013 IL App (4th) 130585, ¶¶ 50, 55.

¶ 32                                                    CONCLUSION

¶ 33        A rational trier of fact could find that, when Justin said, "you remember me" while pulling out a gun, Candelaria reasonably feared that Justin would shoot him.  Thus, we affirm the conviction for aggravated assault.  We also affirm the conviction for AUUW, but we vacate the conviction for UPF under the one-act, one-crime rule.  We vacate the order of commitment and remand for the trial court to comply fully with section 5-750 of the Act, by hearing evidence and taking into consideration the services available through DoJJ to assist Justin.

¶ 34        Affirmed in part, vacated in part and remanded.