# Illinois Official Reports

## Appellate Court

*In re Ronald J.*, 2017 IL App (4th) 160855

| | |
|---|---|
| Appellate Court Caption | In re RONALD J., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Ronald J., Respondent-Appellant). |
| District & No. | Fourth District<br>Docket Nos. 4-16-0855, 4-16-0856 |
| Filed | April 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Logan County, Nos. 14-JD-21, 15-JD-31; the Hon. William G. Workman, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Joel C. Wessol, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jonathan Wright, State's Attorney, of Lincoln (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Steigmann and Pope concurred in the judgment and opinion. |

**OPINION**

¶ 1    After adjudicating respondent, Ronald J., to be a delinquent minor and making him a ward of the court, the trial court committed him to the Department of Juvenile Justice (Department). Respondent appeals on two grounds: (1) the court erred by finding commitment to be in his best interest and in the best interest of the public, and (2) the court failed to review statutorily required evidence before ordering his commitment.

¶ 2    We agree with the second argument and thus do not reach the first argument. One of the individualized factors the trial court had to consider was the "[e]ducational background of the minor, indicating whether the minor ha[d] ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school." 705 ILCS 405/5-750(1)(D) (West 2014). The only school-related evidence in the record is that respondent is a freshman at Lincoln Community High School, he has accumulated a lot of unexcused absences, and he has been repeatedly suspended. The record does not reveal anything else about his educational background or whether he ever has been assessed with a learning disability. Nor does the record reveal the nature of the disciplinary incidents for which he was suspended. Until the trial court hears and considers such evidence, it lacks the discretion to order commitment. See 705 ILCS 405/5-750(1) (West 2014). Therefore, we vacate the order of commitment, and we remand this case for full compliance with section 5-750(1)(D) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-750(1)(D) (West 2014)).

¶ 3                                    I. BACKGROUND

¶ 4    On May 5, 2014, in Logan County case No. 14-JD-21, the State filed a petition for adjudication of wardship, in which the State accused respondent (born April 26, 2000) of committing misdemeanor theft (720 ILCS 5/16-1(a)(1) (West 2014)) by stealing a child's bicycle from a front lawn.

¶ 5    On July 17, 2014, in return for 12 months of probation, respondent pleaded guilty to theft. The probation was conditional on his serving 15 days of detention, which were stayed; performing 40 hours of community service within the next 9 months; and refraining from committing any further crimes.

¶ 6    On March 4, 2015, the State filed a motion to lift the stay of detention. According to the motion, respondent had accumulated 40 unexcused absences from Lincoln Community High School; 30 in-school suspensions; 8 external suspensions, each lasting one day; and an external suspension lasting four days. On March 12, 2015, the trial court found respondent to be noncompliant with probation, and the court lifted the stay as to seven days.

¶ 7    On April 30, 2015, the State filed another motion to lift the stay of detention. According to this motion, respondent had accumulated nine unexcused absences from school and had received an external suspension for five days. On June 4, 2015, the trial court again found him to be noncompliant, and the court lifted the stay as to eight days.

¶ 8    On June 24, 2015, the State filed a petition to revoke probation. The petition alleged that respondent had failed to complete 40 hours of community service.

¶ 9    On July 14, 2015, in Logan County case No. 15-JD-31, the State filed another petition for adjudication of wardship. This petition alleged that respondent had committed the Class 2

felony of burglary (720 ILCS 5/19-1(a), (b) (West 2014)) by entering a car and taking change out of the center console.

¶ 10 In a hearing on September 10, 2015, respondent pleaded guilty to burglary and admitted he had failed to perform the required community service. The trial court revoked probation and resentenced him to five years of probation. This probation was conditional on his attending school each day (or having an excused absence), completing 60 hours of community service within 9 months, and staying indoors between 8 p.m. and 6 a.m. each day of the week.

¶ 11 On November 19, 2015, the State filed a motion to lift the stay of detention on the ground that respondent had received 27 unexcused absences from school. On December 3, 2015, the trial court found respondent to be noncompliant with probation, and the court lifted the stay as to 15 days.

¶ 12 On June 24, 2016, the State filed a petition to revoke the probation in both cases on the grounds that respondent had failed to attend school, complete the 60 hours of community service, and remain indoors between 8 p.m. on June 2, 2016, and 6 a.m. on June 3, 2016. On September 15, 2016, respondent admitted failing to attend school, as evidenced by 92 unexcused absences in 2016, and he also admitted failing to perform the community service. The trial court scheduled a sentencing hearing for October 27, 2016, and directed respondent to "go across the hall and talk with the juvenile probation officer and set up a meeting" for a social investigation. See 705 ILCS 405/5-701 (West 2014).

¶ 13 On October 18, 2016, the Logan County probation office filed a social investigation report. Under the heading of "Juvenile Information," the report stated only this:

"[Respondent] failed to meet with Court Services to assist in the preparation of this report.

[Respondent] is enrolled as a freshman at Lincoln Community High School but has not received any credits due to his poor attendance. According to records from Lincoln Community High School, the minor received 105.5 unexcused absences during the 2015-2016 school year and has accumulated [30] unexcused absences for the current school year."

¶ 14 In arguments at the conclusion of the sentencing hearing, respondent's attorney pointed out that no evidence had been presented as to respondent's educational background, including whether he had a learning disability (see 705 ILCS 405/5-750(1)(D) (West 2014)), and that no evidence had been presented regarding his physical, mental, and emotional health (see 705 ILCS 405/5-750(1)(E) (West 2014)). Nevertheless, because of respondent's failure to cooperate with the social investigation and his persistent unwillingness to abide by the conditions of probation, the trial court committed him to the Department.

¶ 15 This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17 If a trial court adjudges a minor to be delinquent for an offense other than first degree murder, and if the court makes certain findings, it lies within the court's discretion whether to commit the minor to the Department. See 705 ILCS 405/5-750(1) (West 2014) ("*may* commit him or her to the Department" (emphasis added)); *In re Henry P.*, 2014 IL App (1st) 130241, ¶ 57. The required findings are as follows:

"(1) Except as provided in subsection (2) of this Section [(the subsection pertaining to delinquency for first degree murder, for which commitment is required)], when any delinquent has been adjudged a ward of the court under this Act, the court may commit him or her to the Department ***, if it finds that (a) his or her parents, guardian[,] or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train[,] or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5-740 [(705 ILCS 405/5-740 (West 2014))], or it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent; and (b) commitment to the Department *** is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement. Before the court commits a minor to the Department ***, it shall make a finding that secure confinement is necessary, following a review of the following individualized factors:

(A) Age of the minor.

(B) Criminal background of the minor.

(C) Review of results of any assessments of the minor, including child centered assessments such as the CANS [(Child and Adolescent Needs and Strengths)].

(D) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.

(E) Physical, mental[,] and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what services were provided and whether the minor was compliant with services.

(F) Community based services that have been provided to the minor, and whether the minor was compliant with the services, and the reason the services were unsuccessful.

(G) Services within the Department *** that will meet the individualized needs of the minor.

(1.5) Before the court commits a minor to the Department ***, the court must find reasonable efforts have been made to prevent or eliminate the need for the minor to be removed from the home, or reasonable efforts cannot, at this time, for good cause, prevent or eliminate the need for removal, and removal from home is in the best interests of the minor, the minor's family, and the public." 705 ILCS 405/5-750(1), (1.5) (West 2014).

¶ 18    In the order of commitment in this case, the trial court made the following four findings. First, it found that respondent's "parents" (actually, his mother was the only surviving parent) were unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline him, or were unwilling to do so, and that the best interests of respondent, the public, or both would not be served by placement under section 5-740. See 705 ILCS 405/5-750(1) (West 2014). (Placement under section 5-740 meant placement in the custody of a suitable relative or other person, placement under the guardianship of a probation officer, commitment to an agency other than the Department, commitment to a licensed

training school or industrial school, or commitment to an institution other than the Department that had among its purposes the care of delinquent children. 705 ILCS 405/5-740(1) (West 2014).) Second, the court found that reasonable efforts had been made to prevent or eliminate the need for respondent to be removed from the home. See 705 ILCS 405/5-750(1.5) (West 2014). Third, the court found that commitment to the Department was the least restrictive alternative, given the unsuccessful efforts to come up with less restrictive alternatives to secure confinement. See 705 ILCS 405/5-750(1) (West 2014). The commitment order explained that these efforts had been unsuccessful because respondent had "failed to meet with Court Services" and had "been unsuccessful on probation." Fourth, the court found that "secure confinement [was] necessary after a review of the *** factors" in section 5-750(1)(A) to (G) (705 ILCS 405/5-750(1)(A) to (G) (West 2014)). Thus, the court made all the findings that sections 5-750(1) and (1.5) required.

¶ 19 Respondent argues, however, that the record lacks some indispensable evidence to support the fourth finding (the finding that "secure confinement" was "necessary" (705 ILCS 405/5-750(1) (West 2014)). Specifically, he argues the record lacks evidence relevant to the following "individualized factors" in section 5-750(1):

"(D) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.

(E) Physical, mental[,] and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what services were provided and whether the minor was compliant with services.

***

(G) Services within the Department *** that will meet the individualized needs of the minor." 705 ILCS 405/5-750(1)(D), (E), (G) (West 2014).

¶ 20 To demonstrate the indispensability of each of the individualized factors in section 5-750(1) (705 ILCS 405/5-750(1) (West 2014)), respondent cites *In re Justin F.*, 2016 IL App (1st) 153257, ¶ 30. In that case, the record lacked evidence regarding only one of the factors, the factor in subsection (G) (705 ILCS 405/5-750(1)(G) (West 2014) ("Services within the Department *** that will meet the individualized needs of the minor.")). *Justin F.*, 2016 IL App (1st) 153257, ¶ 30. That was enough to invalidate the order of commitment. *Id.* ¶ 31. The appellate court vacated the order of commitment and remanded the case for full compliance with section 5-750. *Id.*

¶ 21 The State argues, however, that *Justin F.* is distinguishable for two reasons.

¶ 22 First, the respondent in *Justin F.* pointed out to the trial court, in the sentencing hearing, the lack of evidence regarding subsection (G) (705 ILCS 405/5-750(1)(G) (West 2014)). *Justin F.*, 2016 IL App (1st) 153257, ¶ 11. In the present case, by contrast, respondent never did so. Respondent does not appear to dispute his failure to raise subsection (G) to the trial court, and in our review of the transcripts, we do not see where his attorney ever did so. "It is well settled that issues not raised in the trial court are deemed waived" (or, more precisely, forfeited) "and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Delinquency proceedings are not exempt from the doctrine of procedural forfeiture. *In re M.W.*, 232 Ill. 2d 408, 430 (2009). In the trial court, respondent's attorney objected to noncompliance with subsections (D) and (E) (705 ILCS 405/5-750(1)(D), (E)

(West 2014)), but he did not object to noncompliance with subsection (G) (705 ILCS 405/5-750(1)(G) (West 2014)). Therefore, the issue of noncompliance with subsection (G) is forfeited. See *M.W.*, 232 Ill. 2d at 430; *Haudrich*, 169 Ill. 2d at 536.

¶ 23 That leaves the factors in subsections (D) and (E) (705 ILCS 405/5-750(1)(D), (E) (West 2014)), and as to them, the State makes a second argument, an argument of estoppel. The State argues that because respondent, in defiance of the trial court's order, failed to go to Court Services so that arrangements could be made to interview him, he should be estopped from complaining of the lack of evidence regarding subsections (D) and (E), considering that interviews would have yielded such evidence, or at least would have led to such evidence or revealed where it could be obtained. Quoting *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004), the State argues "[i]t would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings."

¶ 24 In response to this estoppel argument, respondent disputes he had a duty to submit to an interview by Court Services. He notes that if a minor is found to be guilty of a *sex offense*, the minor "shall be required as part of the social investigation to submit to a sex offender evaluation" but that, otherwise, nothing in section 5-701 requires a minor to assist in the preparation of a social investigation report. 705 ILCS 405/5-701 (West 2014). By his reasoning, the specification of one thing implies the exclusion of the other. See *Fraternal Order of Police, Chicago Lodge No. 7 v. City of Chicago*, 2016 IL App (1st) 143884, ¶ 46.

¶ 25 Even if respondent lacked a statutory duty to cooperate with the social investigation, statutory law is not the only potential source of duty. Parties have a duty to comply with court orders, and the trial court told respondent to go to Court Services. Even so, respondent questions whether a court can legitimately order someone to relinquish a constitutional right, including the right to remain silent (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10). That is a valid question. Things he would have told the probation officer or evaluator, in an interview, could have ended up being used against him in the upcoming sentencing hearing, and as he argues, his constitutional right to remain silent extended to sentencing. He cites *People v. Ashford*, 121 Ill. 2d 55, 80 (1988), in which the supreme court held: "Whatever information the defendant provided the probation officer could have been used against him at the sentencing proceeding, and he therefore had a right to remain silent." He also cites *People v. Szabo*, 94 Ill. 2d 327, 361 (1983), in which the supreme court stated: "We can discern no basis to distinguish between the guilt and penalty phases of [the] respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned." Granted, *Ashford* and *Szabo* are criminal cases, but the United States Supreme Court held in *In re Gault*, 387 U.S. 1, 49 (1967): "[J]uvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination."

¶ 26 "In accordance with the text of the Fifth Amendment, we must accord the privilege the same protection in the sentencing phase of 'any criminal case' as that which is due in the trial phase of the same case [citation]." *Mitchell v. United States*, 526 U.S. 314, 328-29 (1999). To do as the State invites us to do—to hold respondent to be estopped because he exercised his constitutional right to remain silent—would effectively penalize him for the exercise of that right. See *People v. Mulero*, 176 Ill. 2d 444, 462-63 (1997). The purpose of the rule of invited error is to prevent duplicity and unfairness (*Lozman v. Putnam*, 379 Ill. App. 3d 807, 828-29

- 6 -

(2008)), not to chill the exercise of constitutional rights by imposing a cost upon their exercise (see *Mulero*, 176 Ill. 2d at 462-63).

¶ 27 Although we refrain from penalizing respondent in any way for exercising his right to remain silent, there is no avoiding a practical reality: without cooperation and participation by respondent or his mother, it was practically impossible to investigate his "[p]hysical, mental[,] and emotional health." 705 ILCS 405/5-750(1)(E) (West 2014). Respondent disagrees. Citing a federal regulation (45 C.F.R. § 164.512(f)(1)(ii)(A) (2016)), he argues the trial court could have ordered health care providers to release his medical records. But where are those records to be found? It is not public knowledge where respondent has obtained medical treatment, and without that information from respondent or his mother, the court would not know to which health care provider the order should be issued. There are thousands of health care providers in Illinois, and it would be impracticable to investigate which, if any, of them provided medical services to respondent.

¶ 28 It would have been practicable, though, to perform some investigation into subsection (D) (705 ILCS 405/5-750(1)(D) (West 2014) ("Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.")). It is known that respondent is a freshman at Lincoln Community High School; the social investigation report says so. School records can be obtained by court order. 105 ILCS 10/6(a)(5) (West 2014). They would be a logical source for finding out a respondent's educational background, whether he or she had been assessed for a learning disability, and whether there had been any disciplinary incidents at school. See 705 ILCS 405/5-750(1)(D) (West 2014); see also *In re Raheem M.*, 2013 IL App (4th) 130585, ¶ 50 ("This is not some *pro forma* statement to be satisfied by including the language of the statute in a form sentencing order.").

¶ 29 As it turns out, then, *Justin F.* is on point: not because of the lack of evidence regarding subsection (G), which, as we have held, respondent has forfeited, but because of the lack of evidence regarding subsection (D). Therefore, we vacate the order of commitment, and we remand this case for further consideration of subsection (D). See *Justin F.*, 2016 IL App (1st) 153257, ¶ 31; *Raheem M.*, 2013 IL App (4th) 130585, ¶ 61.

¶ 30                                     III. CONCLUSION

¶ 31 For the foregoing reasons, we affirm the adjudication of delinquency, but we vacate the order of commitment to the Department, and we remand this case for full compliance with section 5-750(1)(D) of the Act (705 ILCS 405/5-750(1)(D) (West 2014)).

¶ 32 Affirmed in part and vacated in part; cause remanded with directions.