2019 IL App (1st) 191040-U

THIRD DIVISION
December 26, 2019

No. 1-19-1040

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF: J.I., a Minor | ) ) | Appeal from the Circuit Court of |
| (THE PEOPLE OF THE STATE OF ILLINOIS | ) ) | Cook County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 19 JD 153 |
| J.I. | ) ) | Honorable Stuart F. Lubin, |
| Respondent-Appellant.) | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Ellis and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; the trial court complied with the requirement of the Juvenile Court Act to consider less restrictive alternatives and to consider enumerated statutory factors before sentencing respondent to secure confinement in the Illinois Department of Juvenile Justice.

¶ 2    The circuit court of Cook County adjudicated respondent, J.I., delinquent and entered an order for an indeterminate term of secure confinement in the Illinois Department of Juvenile Justice (DJJ).  Respondent appeals only the order for secure confinement on the grounds the trial court failed to comply with the requirements of section 5-750 of the Juvenile Court Act of 1987 to consider the least restrictive alternative to confinement.  705 ILCS 405/5-750 (West 2016).

¶ 3    For the following reasons, we affirm.

¶ 4                                                    BACKGROUND

¶ 5      In January 2019 the State filed a petition for adjudication of wardship of respondent, Jafaar I., born April 14, 2001, alleging that respondent committed the offense of vehicular hijacking, possession of a stolen motor vehicle (PSMV), and criminal damage to property.  The allegations arose from an incident in which the victim parked his car in a parking lot, went over to his girlfriend's car and was talking to her after she got off work, and when the victim returned to his car he saw respondent sitting in the driver's seat.  Respondent then began driving the victim's car away.  The victim's girlfriend followed the victim's car on foot, and the victim got into the girlfriend's car and followed his car down an alley.  Respondent crashed the victim's car into a fence after entering the alley.  Respondent attempted to flee on foot but the victim caught respondent and held him until police arrived.

¶ 6      The trial court found the State proved the charges beyond a reasonable doubt and entered a finding of delinquency and merged the PSMV charge with the vehicular hijacking charge. Respondent does not challenge that finding on appeal.  The court asked if respondent had a background and the State responded "yes, this minor respondent does have a pretty extensive background.  He has eight no-filed cases, six filed cases.  He was recently committed to the Department of Juvenile Justice."  The court ordered respondent held in custody for sentencing.

¶ 7      At the sentencing hearing, a probation officer (PO) testified this adjudication was respondent's fifth finding of delinquency.  The PO testified respondent had "already been to the department of corrections."  Respondent did well on parole "at first."  The PO testified respondent stayed home and enrolled in school.  Respondent "kind of fell off" when his electronic monitoring was vacated and respondent had an issue at school which made him fearful to return.  Thereafter respondent "stayed away from the house and school in an effort to evade

parole." Respondent violated parole and "ended up on a warrant from parole for fear of having to return to the DJJ." The PO testified:

> "At this point he has had probation, he has had [electronic monitoring;] he has been in the detention center; and then ultimately—and [intensive probation services,] and then ultimately IDJJ.
>
> At this point I feel that he's exhausted the services of juvenile court. And I think it's in his best interest and the best interest of the community that he return to the Department of Corrections."

¶ 8    The trial court asked the State for its recommendation. The State responded by informing the court that respondent has had 14 arrests and 6 filed cases and had been sentenced to the DJJ before this incident. The State asked that respondent "be placed in the [DJJ] on a straight commitment."

¶ 9    Respondent's attorney argued that respondent had turned 18-years old and although "as has been noted [respondent] has an extensive history in and out of detention and out of DJJ," respondent "does have some things going for him." Respondent's attorney stated that respondent is "a very bright young man" and has "parents who are very involved." Respondent's attorney also noted that in the Juvenile Risk Assessment (JRA) Social Investigation the overall risk level for respondent was indicated to be moderate. Respondent's attorney argued that since respondent was an adult "it would be worth reconsidering the possibility of probation or [intensive probation services] so that he can continue to make improvements. And since DJJ seems to not be working for this minor in terms of DJJ."

¶ 10    The trial court asked respondent if there was anything he wanted to say. Respondent stated he deserved a second chance. The court replied: "Well, it's going to be after you get out

of the Department of Corrections[.] It's the least restrictive alternative for you." The court

continued:

> "Somebody just got shot trying to take somebody's car, and murdered by a
>
> person with a firearm identification card. These cases are dangerous for you.
>
> Somebody will kill you the next time you do something like this.
>
> So while you are in the Department of Corrections, you think about that.
>
> Once you get out you don't come back to juvenile court anymore. I will never see
>
> you again. And in adult court they don't give you as many chances. We have
>
> been on everything. We have given you every opportunity to show us that you
>
> can be a law abiding citizen, and for some reason you just can't do it.
>
> There is a finding of best interest in wardship. There is also a finding of
>
> inability and best interest, commit Department of Juvenile Justice."

After admonishing respondent of his appeal rights, the trial court stated:

> "While you're in the Department of Juvenile Justice, you know what they
>
> are going to do. They will assess you, you have substance abuse treatment,
>
> mental health treatment, counseling, health care, and you can earn your way out
>
> of there depending on your behavior which wasn't great upstairs here. Hopefully
>
> it will be better in the Department of Corrections."

¶ 11    The JRA to which respondent's attorney referred is contained in the record and has

sections (listed as "domains") reporting on respondent as to his (1) juvenile justice history, (2)

family and living arrangements, (3) peers and social support network, (4) education and

employment, (5) pro-social skills, (6) substance abuse, mental health and personality, and (7)

values, beliefs and attitudes. The JRA concludes with an "Initial Case Plan Overview." The

Initial Case Plan Overview identified strengths and barriers in one target domain for initial intervention work. The domain identified was substance abuse, mental health and personality. The strength in this domain was that respondent "is aware that his behavior changes when drinking." The barrier in this domain was that respondent "doesn't have a peer group that is drug or alcohol free—constant temptation." The Initial Case Plan Overview concluded with the following passage:

> "[Respondent] has been on traditional probation, he has been referred to services in the community and within the probation department, he has been on electronic monitoring and been held in detention multiple times. He has [*sic*] an opportunity on [intensive probation services] and ultimately was sentenced to IDJJ. He was not successful on parole and was out on a warrant when this arrest occurred. He seems clear that the services of the Juvenile Court have been exhausted and a recommendation for commitment to IDJJ is both in his best interest as well as the safety of the community."

The PO who testified at the sentencing hearing prepared the JRA .

¶ 12 The trial court sentenced respondent to an indeterminate term in the DJJ with credit for 96 days in presentencing custody.

¶ 13 This appeal followed.

¶ 14                                    ANALYSIS

¶ 15 Respondent argues his sentence should be reversed and the cause remanded for a new sentencing hearing because the trial court allegedly failed to comply with section 5-750 of the Juvenile Court Act (Act) (705 ILCS 405/5-750 (West 2016)) requiring the court to make certain findings before sentencing a respondent to the DJJ. "A trial court's decision to send a minor to

DOJJ is reviewed for an abuse of discretion. [Citation.] The question of whether the court complied with statutory requirements is a question of law we review *de novo*. [Citation.]" *In re Ashley C.*, 2014 IL App (4th) 131014, ¶ 22. Section 5-750 of the Act reads, in pertinent part, as follows:

> "(1) Except as provided in subsection (2) of this Section, when any delinquent has been adjudged a ward of the court under this Act, the court may commit him or her to the Department of Juvenile Justice, if it finds that *** (b) commitment to the Department of Juvenile Justice is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement. Before the court commits a minor to the Department of Juvenile Justice, it shall make a finding that secure confinement is necessary, following a review of the following individualized factors:
>
> (A) Age of the minor.
>
> (B) Criminal background of the minor.
>
> (C) Review of results of any assessments of the minor, including child centered assessments such as the CANS.
>
> (D) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.
>
> (E) Physical, mental and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what

services were provided and whether the minor was compliant with services.

(F) Community based services that have been provided to the minor, and whether the minor was compliant with the services, and the reason the services were unsuccessful.

(G) Services within the Department of Juvenile Justice that will meet the individualized needs of the minor." 750 ILCS 405/5-750(1) (West 2016).

¶ 16    Respondent argues the trial court failed to comply with its duty under section 5-750 to determine whether commitment to the DJJ was the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives and the reasons those efforts were unsuccessful. Respondent states that in his case, there was no evidence of any efforts to locate a less restrictive alternative than a sentence to the DJJ and the trial court did not mention any such efforts. According to respondent, the State did not present any evidence of efforts to locate a less restrictive alternative and the JRA did not indicate that any other alternatives were considered. Respondent argues the trial court merely stated key words from section 5-750, and that is insufficient to comply with the statute.

¶ 17    The State responds the trial court did make its determination to sentence respondent to the DJJ based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and based on the reasons why efforts were unsuccessful in locating a less restrictive alternative. The State relies on the probation officer's testimony that respondent "has had probation, he has had [electronic monitoring;] he has been in the detention center; and then ultimately—and [intensive probation services,] and then ultimately IDJJ" and the trial court's

finding that: "We have given you every opportunity to show us that you can be a law abiding citizen, and for some reason you just can't do it."

¶ 18    In *In re Raheem M.*, 2013 IL App (4th) 130585, ¶ 47, on which respondent relies, the court found that "the record before this court, which appears to be complete, contains no evidence regarding efforts to identify a less restrictive alternative to secure confinement, either in the social history report or at the sentencing hearing."  In that case, unlike this one, the respondent had never been charged with a criminal offense and "had no prior time in the DOJJ." *Id.* ¶ 12.  Also unlike *Raheem M.*, here the trial court did receive evidence about alternatives to confinement prior to sentencing respondent to the DJJ.  See *id.* ¶ 61.  Specifically, the record contains evidence that the less restrictive alternatives of probation, electronic monitoring, and intensive probation were all tried and were all unsuccessful in preventing respondent from engaging in criminal behavior.

¶ 19    Further, in *In re Justin F.*, 2016 IL App (1st) 153257, ¶ 26, also cited by respondent, the trial court referred the respondent to intensive probation services for an evaluation because "[i]n light of [the respondent's] three violations of probation *** and his commission of the offense at issue here while on parole, the court did not further consider the possibility of regular probation or any other alternative less restrictive than intensive probation." *Justin F.*, 2016 IL App (1st) 153257, ¶ 26.  There is no indication in *Justin F.* that the respondent in that case had previously received intensive probation services.  See *id.*  On appeal, the court found no error in the manner in which the trial court proceeded.  *Id.*  Similarly, in this case, respondent committed the instant offense while on parole on an outstanding warrant for a parole violation.  Additionally, respondent had previously received intensive probation services.  Thus, the trial court could have considered more restrictive alternatives than intensive probation services for respondent in this

case.  See *id*.  Moreover, in *Justin F.*, the "probation officers working for intensive probation services told the court that [the respondent's] prior violations of probation and parole made him 'inappropriate for the program.' "  In *Justin F.*, this court found the trial court had "adequately inquired into less restrictive alternatives *** and the evidence supported the trial court's express finding that 'reasonable efforts were made to locate less restrictive alternatives to secure confinement and were unsuccessful.' "  *Id.* ¶ 26.  In this case, the probation officer who prepared respondent's JRA similarly testified: "At this point I feel that he's exhausted the services of juvenile court.  And I think it's in his best interest and the best interest of the community that he return to the Department of Corrections."

¶ 20    Based on the record before this court, we similarly find the trial court did not commit respondent to the DJJ until finding that "commitment to the Department of Juvenile Justice is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement."  705 ILCS 405/5-750(b) (West 2016).

¶ 21    Respondent also argues the trial court failed to comply with its obligation to consider the individualized factors stated in section 5-750(1)(b) before sentencing him to the DJJ.  Respondent asserts there is no evidence the trial court considered the factors as they apply to respondent.  The specific factors respondent asserts the trial court failed to consider are:  (1) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.  705 ILCS 405/5-750(1)(D) (West 2016).

(2) Physical, mental and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what services were provided and whether the minor was compliant with services. 705 ILCS 405/5-750(1)(E) (West 2016).

(3) Community based services that have been provided to the minor, and whether the minor was compliant with the services, and the reason the services were unsuccessful. 705 ILCS 405/5-750(1)(F) (West 2016).

(4) Services within the Department of Juvenile Justice that will meet the individualized needs of the minor. 705 ILCS 405/5-750(1)(G) (West 2016).

¶ 22    Respondent argues the trial court "merely relied on the probation officer's unsubstantiated claim that [respondent] 'had exhausted the services of juvenile court' and went along with the State's recommendation of commitment to DJJ." The State argues that nearly every factor respondent complains of "was addressed, either directly or indirectly, in the JRA" and it is "clear that the trial court was aware of the JRA as not only was it contained in the record, but also alluded to by [respondent]" when arguing in mitigation.

¶ 23    We reject respondent's contention the trial court "merely relied on the probation officer's *** claim that [respondent] exhausted the services of juvenile court." The probation officer's testimony was amply supported by the record. Respondent does not argue the information contained in his JRA was incomplete or incorrect. The State first points to the section of the JRA titled "Education and Employment." In that section the JRA lists respondent's education background and states respondent "does not receive special ed services." As for respondent's physical, mental and emotional health, the JRA also contains a section titled "Substance Abuse, Mental Health and Personality." That section of the JRA states respondent "does not feel that he has a problem with alcohol" and that respondent "did complete outpatient substance abuse

counseling through YOS during a previous period of probation." It also states that respondent "is not currently prescribed any mediation but *** did mention difficultly sleeping after being woken from bad dreams." The JRA states respondent "did not want to discuss the nature of these dreams but he was encouraged to talk with someone and told that there are ways to get relief from those dreams." Additionally, the JRA addresses respondent's family and living arrangements, peers and social support network, pro-social skills, and his values, beliefs and attitudes.

¶ 24    In response to respondent's argument the trial court "did not discuss any available 'community-based services' " the State argues respondent is attempting to impose a burden on the trial court—to "discuss" rather than "review" the factors enumerated in the Act—that does not appear in the statute and, nonetheless, the JRA "detailed several services that had previously been offered *** with varying degrees of success." The JRA states that respondent understands that "while drinking alcohol he is more likely to make poor decisions." The JRA also states respondent completed outpatient substance abuse counseling during a previous period of probation. The Initial Case Plan Overview in the JRA states:

>"[Respondent] has been on traditional probation, *he has been referred to services in the community* and within the probation department, he has been on electronic monitoring and been held in detention multiple times. He has [*sic*] an opportunity on IPS and ultimately was sentenced to IDJJ. He was not successful on parole and was out on a warrant when this arrest occurred. He seems clear that the services of the Juvenile Court have been exhausted and a recommendation for commitment to IDJJ is both in his best interest as well as the safety of the community." (Emphasis added.)

The State asserts this "summary explicitly stated [respondent's] failures with previous services offered him and the reasons why commitment to IDJJ was the last resort in this case." We agree.

¶ 25    In *Raheem M.*, the court found the respondent's sentence had to be vacated and the cause remanded for a new sentencing hearing in part because, although "the form sentencing order states the [trial] court reviewed community-based services provided to the minor" in that case "no services were provided to the minor, so he had no opportunity to demonstrate compliance." *Raheem M.*, 2013 IL App (4th) 130585, ¶ 47. This case is distinguishable in that, in this case, respondent's JRA does state that respondent "has been referred to services in the community." The JRA also contains respondent's juvenile justice history and provides evidence of the lack of success of respondent's referrals. The JRA states respondent "has a group of friends that he spends a significant amount of time with that are involved in riskier/criminal activities. [Respondent] couldn't predict which group he would seek out, were he to be released." Respondent "doesn't *** seem to see the connection between one group [of friends that is not involved in gangs or criminal behavior] helping him to avoid trouble while the other group seems to lead him to trouble." Respondent "struggles *** making the right choices in his life." Respondent's parents also opined that respondent "is a follower and has been lead to trouble by some of his peers." Thus the JRA explains the reasons community-based referrals were not successful.

¶ 26    Generally, regarding sentencing, "[t]he trial court is presumed to consider all relevant factors and any mitigation evidence presented, but has no obligation to recite and assign any value to each factor. [Citation.] Rather, the defendant 'must make an affirmative showing that the sentencing court did not consider the relevant factors.' [Citation.]" *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 50. In *Justin F.*, the respondent also argued that "the trial court failed to

consider most of the individualized factors listed in the Act." *Justin F.*, 2016 IL App (1st) 153257, ¶ 27. This court relied on the fact the record included "several assessments of [the respondent,] and the [trial] court's comments indicat[ing] that it reviewed those assessments" (*id.*) to find that there was "some evidence in the record concerning all of the statutorily required facts, except one" (*id.* ¶ 30). In this case, respondent does not assert that the trial court failed to consider the information contained in his JRA. The trial court may rely on "the written reports included in the record" to satisfy the requirements of section 5-750(1) of the Act. *Id.* ¶¶ 28-30. Because there is "evidence in the record concerning all of the statutorily required factors" that respondent complains the trial court failed to consider discussed above, and no evidence the trial court failed to consider them, we can find no error. *Id.* ¶ 30.

¶ 27 Finally, with regard to services within the Department of Juvenile Justice that will meet respondent's individualized needs, respondent concedes the trial court said that the DJJ would evaluate respondent for multiple services but asserts the court "did not consider anything specific to [him]" and the court erroneously "left it up to DJJ to determine what [the] services would be for [respondent.]" Respondent asserts, without any support, that the latter error could result in DJJ deciding respondent does not need any services "whatsoever," which would be a "crucial error" because respondent "needed to be further evaluated regarding his report that 'bad dreams' made it difficult for him to sleep" and respondent reported that he "regularly consumed marijuana and alcohol." The State argues the trial court "clearly intended *** a specific evaluation *** rather than a blanket set of conditions that may not be applicable to [respondent.]" Again, we agree.

¶ 28 Respondent's argument that "the record is *** devoid of any evidence showing that the [trial] judge considered the availability of services for [respondent] in the DJJ before committing

him" is refuted by the record itself. The trial judge stated: "While you're in the Department of Juvenile Justice, you know what they are going to do. They will assess you, you have substance abuse treatment, mental health treatment, counseling, health care." The record also supports that these are the services "that will meet the individualized needs of the minor." 705 ILCS 405/5-750(1)(G) (West 2016). Respondent's needs are stated in the JRA. Respondent admitted there was a difference in his peer groups but he is not "able to talk about the differences in him that would lead him to choose one peer group over the other." Respondent was encouraged to talk to someone and told there are ways to get relief from his dreams. Respondent admitted he "is more likely to get in trouble when drinking." Respondent points to nothing to suggest these needs cannot be addressed through "substance abuse treatment, mental health treatment, [and] counseling" as the trial court stated respondent will receive in the DJJ.[1] Therefore, respondent's argument that the trial judge's ruling does not reflect his specific circumstances must fail. See *Foxx*, 2018 IL App (1st) 162345, ¶ 50. Based on the foregoing we find the trial court followed the dictates of section 5-750 of the Act before sentencing respondent to the DJJ.

¶ 29                                    CONCLUSION

¶ 30    For the foregoing reasons, the circuit court of Cook County is affirmed.

¶ 31    Affirmed.

---

[1]     "This court may take judicial notice of information on a public website even though the information was not in the record on appeal." *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n 9. Programming provided to youth in the DJJ includes "Substance abuse Treatment, Mental Health Treatment, Individual and group counseling, [and] Health care." https://www2.illinois.gov/idjj/Pages/faq.aspx (visited November 3, 2019).